

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2001

# PA Power Co v. Local Union 272

Precedential or Non-Precedential:

Docket 01-2116

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"PA Power Co v. Local Union 272" (2001). *2001 Decisions.* Paper 297.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2116

PENNSYLVANIA POWER COMPANY,
        Appellant

v.

LOCAL UNION NO. 272 OF THE INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO.

Appeal from the United States District Court
For the Western District of Pennsylvania
D.C. No.: 00-cv-01735
District Judge: Honorable Gary L. Lancaster

Argued: October 17, 2001

Before: ALITO, BARRY, and ROSENN, Circuit Judges.

(Filed: December 21, 2001)

        James A. Prozzi, Esq. (Argued)
        A. Patricia Diulus-Myers, Esq.
        Jackson Lewis Schnitzler &
         Krupman
        One PPG Place, 28th Floor
        Pittsburgh, PA 15222
         Counsel For Appellant

        Joshua M. Bloom, Esq. (Argued)
        Gatz, Cohen, Segal, Koerner &
         Colarusso, P.A.
        400 Law & Finance Building
        Pittsburgh, PA 15219
         Counsel For Appellee

OPINION OF THE COURT

ROSENN, Circuit Judge.

In recent years, federal policy has encouraged the arbitration of unsettled labor disputes as the terminal point in the grievance procedures of collective bargaining agreements. Under such policy, the judicial function is not to review the merits of an arbitration award but is limited to a determination of whether the award "draws its essence from the collective bargaining agreement." United Steelworkers of Am. v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960). The narrow issue presented to us by this appeal requires us to make such a determination.

Local Union #272 of the International Brotherhood of Electrical Workers, AFL-CIO (the Union) initiated a grievance under its collective bargaining agreement (the Agreement) with Pennsylvania Power Company (the Company) covering production and maintenance employees at its Bruce Mansfield Plant (the Plant) with respect to certain early retirement benefits. The Company offered these benefits in a separate cooperative agreement conditional upon the production and maintenance employees' cooperation with management's efforts to improve efficiency. The grievance proceeded to arbitration and the arbitrator found that the Union and its member employees had failed to cooperate with the Company's efficiency efforts. However, the arbitrator concluded that the failure of the Company to provide early retirement benefits to the Union members but to provide them to its supervisory personnel constituted a violation of its collective bargaining agreement with the Union. The award required the Company to provide voluntary retirement program (VRP) benefits to the Union member employees at the Plant.

The Company timely filed a complaint in the United States District Court for the Western District of Pennsylvania seeking to vacate the award. The District Court declined to vacate the award. We reverse.

2

I.

The Company is a public utility engaged in the generation of electric power at its Plant in Shippingport, Pennsylvania. The Union represents the production and maintenance employees of the Plant,1 excluding office clerical employees, guards, other professional employees and "supervisors as defined in the National Labor Relations Act as amended." The Agreement became effective on February 16, 1996, for a period of three years.

Article 1, section 3 of the Agreement provides that"[t]he Company and the Union agree that they will not discriminate, coerce, nor intimidate any employee because of membership or non-membership in the Union."

The Company and the Union also separately agreed that they would "actively support and participate in a joint effort to improve the competitive position of the power plant represented by the Union." To encourage productive and financial efficiency in the face of impending deregulation in the electric generation industry, and the consequent"period of transformation," the Cooperative Agreement provided that the Company would utilize a voluntary retirement benefits program if it needed to reduce its workforce at the Plant. In return, the Union promised to cooperate with the Company in attaining production efficiency. The Cooperative Agreement expressly provided that both prerequisites -- determining the necessity to reduce workforce and determining whether the Union had cooperated in attaining production efficiency -- were within the sole discretion of the Company. The Company incorporated similar cooperative agreements in the collective bargaining agreement with other unions at its other plants.

In 1998, the Company notified the Union that there would be no workforce reductions at the Plant. In addition, even if the workforce were to be reduced, it notified the Union that the Plant bargaining unit employees would not

_____

1. The Company operates other electric generating plants in Pennsylvania and Ohio. They are not covered by the collective bargaining agreement involved in this dispute.

3

be provided voluntary retirement benefits because the Company had determined that the Union had not met the qualifying conditions. In the meantime, the Company did offer such voluntary retirement benefits to bargaining unit employees at its other plants because the Company had determined that the unions representing those employees had cooperated with the Company and met the qualifying conditions. The Company also offered voluntary retirement benefits to supervisory personnel at both the Bruce Mansfield Plant and its sister plants.

As a result of the disparate treatment between the Plant bargaining unit employees and their supervisors with respect to the VRP benefits allegedly "paid out of their own pension plan," the Union filed a grievance under the collective bargaining agreement on April 20, 1998. The Union submits that it "did not claim that its members were entitled to the VRP benefits under the cooperative agreement, nor did it ever claim that the supervisors were party to the cooperative agreement or within the same bargaining unit." The Union processed the grievance to arbitration.

The monies funding the Company pension benefits program are provided solely by the employer and maintained in a common fund.[2] The same pension plan covers all employees, both bargaining unit employees and supervisory personnel.

The arbitrator found that since the Union had not cooperated with the Company in attaining production efficiency that the Cooperative Agreement was not violated. Next, the Union claimed that the Company violated the anti-discrimination provision of the collective bargaining agreement. First, the Union alleged that providing such benefits to bargaining unit employees at other plants

_____

2. The Union in its brief argues that "the pot of money used to pay the supervisory personnel was funded by the supervisory personnel and the bargaining unit employees." (Br. at 2) This is erroneous; at oral argument counsel for the Union acknowledged that only the Company funds the retirement pension plan. The amount of monies paid into the pension fund by the employer on behalf of the Union member employees, however, was the subject of collective bargaining.

4

without providing them to the Bruce Mansfield Plant bargaining unit employees violated the anti-discrimination provision. The arbitrator disagreed. The arbitrator reasoned that bargaining unit employees at other plants were not similarly situated to the Bruce Mansfield Plant bargaining unit employees because the former had cooperated with the Company in attaining production efficiency and the latter had not.

Second, the Union claimed that the Company violated the anti-discrimination provision because it offered retirement benefits to supervisory personnel at the Plant but denied them to the bargaining unit employees. This argument found favor with the arbitrator. He reasoned that because pension payments for supervisors and the production and maintenance employees were drawn from the same fund and supervisors were subject to the same qualifying conditions, the disparate treatment amounted to a violation of the anti-discrimination provision of the collective bargaining agreement. Therefore, the arbitrator directed that the voluntary retirement benefits be afforded to qualified bargaining unit employees at the Plant.

Challenging the award on legal and policy grounds, the Company timely filed suit in the United States District Court pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. S 185(a) to vacate the arbitration award. The complaint alleged the following grounds: (1) the arbitrator's decision did not derive its essence from the Agreement; (2) the award directly conflicts with Article VIII S 2.d of the Agreement which bars the arbitrator from changing or adding to any provisions of the Agreement; (3) the arbitration award violates public policy; and (4) the arbitrator's decision is not supported by the record. Both parties cross-moved for summary judgment. The District Court denied the Company's motion but granted the Union's motion. The District Court held that the arbitration award neither violated public policy nor ignored the clear language of the Agreement, and was supported by the record.

II.

The District Court exercised subject matter jurisdiction pursuant to section 301(a) of the Labor Management

5

Relations Act, 29 U.S.C. S 185(a). This Court has appellate jurisdiction pursuant to 28 U.S.C. S 1291. Our review is plenary, and we apply the same standard as the District Court in reviewing the arbitration award. Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996).

For almost a half century, the United States Supreme Court has consistently held that courts exercise a narrow and deferential role in reviewing arbitration awards arising out of labor disputes. See, e.g., United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of Am. , 461 U.S. 757, 764 (1983). Most recently, in Major League Baseball Players Association v. Garvey, 532 U.S. 504, ___ (2001), and Eastern Associated Coal Corporation v. United Mine Workers of America, District 17, 531 U.S. 57, 62 (2000), the United States Supreme Court reaffirmed that principle. The rationale for the court's limited role is to ensure that the federal policy of encouraging arbitration of labor disputes is not subverted by excessive court intervention on the merits of an award. United Steelworkers of Am., 363 U.S. at 596.

In light of the federal policy encouraging arbitration awards, there is a strong presumption in their favor. Newark Morning Ledger Co. v. Newark Typographical Union Local 103, 797 F.2d 162, 165 (3d Cir. 1986). However, the Supreme Court has at the same time made it clear that courts will intervene when the arbitrator's award does not "draw[ ] its essence from the collective bargaining agreement" and the arbitrator is dispensing his or her own "brand of industrial justice." United Steelworkers of Am., 363 at 597.

Thus, an arbitration award ordinarily will not be vacated unless its essence is not drawn from the collective bargaining agreement. W.R. Grace & Co., 461 U.S. at 764. To put it differently, if the arbitrator's interpretation is in any rational way derived from the collective bargaining agreement, the arbitration award will not be disturbed. Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969). An arbitration award will not be vacated just

6

because the court believes its interpretation of the agreement is better than that of the arbitrator. W.R. Grace & Co., 461 U.S. at 764. It will be vacated, however, if there is a "manifest disregard" of the agreement. Ludwig Honold Mfg. Co., 405 F.2d at 1128.

In United Paperworkers International Union, the Supreme Court made clear that an "arbitrator may not ignore the plain language of the contract." 484 U.S. at 38. Accordingly, this Court has held that "where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop" a reviewing court can vacate the award. Exxon Shipping Co., 73 F.3d at 1295; see also Ludwig Honold Mfg. Co. , 405 F.2d at 1128 (noting limited review but stating that arbitrator's interpretation must still be derived from agreement). In other words, an award may be set aside when an arbitrator manifested a disregard of his authorization, and instead "dispense[d] his own brand of industrial justice." Newark Morning Ledger Co., 797 F.2d at 165 (quoting United Steelworkers of Am., 363 U.S. at 597).

As noted before, the arbitrator ruled that notwithstanding the Union's failure to comply with the qualifying conditions of the Cooperative Agreement for voluntary retirement benefits, to the extent the Company afforded Plant supervisory personnel voluntary retirement benefits it must afford the same benefits to the Plant bargaining unit employees. He reached this result on the basis of the collective bargaining agreement's prohibition of discrimination.

The arbitrator reasoned:

> Company witness Lubich made it clear that both groups were in the same [pension] plan, designed for all Ohio Edison and Pennsylvania Power bargaining-unit employees and Management personnel. Thus, the Company's making these VRP benefits available to Supervisory personnel at Bruce Mansfield even though they failed to meet the qualifying conditions, while denying those benefits to Bruce Mansfield bargaining-unit employees for failure to meet the same conditions constituted improper discrimination, in violation of Article I, Section 3 of the Agreement.

7

The Company here does not seek a judicial review of the merits of the arbitrator's award. The Company does not complain that the arbitrator erred in his interpretation of the Agreement. On the contrary, it claims that the arbitrator acted outside the scope of his contractually delegated authority. The Agreement specifically provides that the arbitrator may not alter or amend it. The Company contends that when the arbitrator ruled that the Company violated the anti-discrimination provision of the Agreement the arbitrator altered and amended the Agreement, acted outside the scope of his authority, and failed to draw his decision from the essence of the Agreement.

In making this award, we agree with the Company that the arbitrator exceeded his powers under the Agreement. Moreover, he altered the Agreement in direct violation of its provision that he had no power to do so. He wrote into the contract that the Plant production and maintenance employees shall have the same benefits as the supervisory employees. The Agreement specifically excludes supervisory employees from its terms. Furthermore, the National Labor Relations Act (NLRA) excludes supervisors from the bargaining unit or from inclusion in a collective bargaining agreement. Supervisors are not employees for collective bargaining purposes under the NLRA.3

Nothing in the labor contract between the parties provides that production and maintenance employees shall have the same benefits as supervisory employees,

_____

3. Congress amended the National Labor Relations Act in 1947 to specifically exclude supervisors from the definition of "employee." The exclusion, 29 U.S.C. S 152(3), provides in pertinent part: "The term `employee' shall include any employee . . . but shall not include an individual employed . . . as a supervisor."

This exclusion "was accompanied by the congressional declaration in a new section 14(a)" providing in pertinent part that:

> [N]o employer subject to this Act shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective
> bargaining.

Robert A. Gorman, BASIC TEXT ON LABOR LAW, UNIONIZATION AND COLLECTIVE BARGAINING 34 (1976).

particularly voluntary retirement benefits. Nothing in the anti-discriminatory provision of the contract between the employer and its union employees remotely provides a basis for a determination that the Company discriminated against its Union employees because it did not offer the same VRP benefits it afforded its supervisors. Congress understood that the dynamics of industry and commerce required that loyalty owed by supervisory personnel to their employer excludes them from collective bargaining for rank and file employees. The one is ordinarily paid on an hourly basis to comply with federal wage and hours laws and the statutory provisions for overtime pay after 40 hours of work per week. Supervisors are ordinarily paid on a salary basis and are not subject to the same overtime provisions of the law. Benefits usually differ between the two groups with respect to health, life insurance, bonus and other benefits.

Nothing in the Agreement, including the anti-discrimination provision, requires that supervisors and bargaining unit employees shall receive the same wages, vacations, or other benefits on the same basis as supervisors. The discriminatory provision of the Agreement refers solely to acts of discrimination between the Company and the Union and its members. This provision of the contract is common in many labor contracts. It apparently finds its genesis in sections 8(a) and (b) of the National Labor Relations Act, 29 U.S.C. SS 158 (a), (b) relating to unfair labor practices. Section 8(a)(3) provides in pertinent part that it shall be an unfair labor practice for an employer to discriminate "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. S 158(a)(3). Section 8(b) provides in pertinent part that it is an unfair labor practice for a labor organization or its agents: "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in Section 157 of this title . . . (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated." 29 U.S.C. S 158(b). Because supervisors are not "employees" under the NLRA for purposes of collective bargaining, an employer's affording

9

retirement benefits to supervisors but not providing them to union member employees cannot possibly constitute discrimination between employees especially under the anti-discrimination section of the Agreement. Carried to its logical conclusion, the arbitrator's reasoning would require an employer to provide its rank and file employees with the same benefits it provides its supervisors unless the employer establishes separate, independent funding for benefits for supervisors and another for non-supervisors, even though the funding is provided entirely by the employer. This is neither the law nor industry practice. It is highly impractical, costly and may even be unmanageable with large companies that have multiple bargaining units in one plant or more, and many separate collective bargaining agreements, to maintain, separate funds, investments, records, and reports.

The District Court concluded that the arbitrator's decision did not bring the supervisors under the terms and conditions of the Agreement, including the Cooperative Agreement. Rather, the District Court reasoned that the arbitrator simply concluded that "no explanation was given as to why supervisory personnel, unlike bargaining unit employees, were not subject to qualifying conditions for VRP benefits and such a lack of explanation amounted to discrimination in contravention of the [Agreement]." However, the employer had no obligation whatsoever to disclose in the grievance and arbitration proceedings its arrangements, contracts or obligations to its supervisors. Such explanation was irrelevant and we can see no evidentiary or legal reason for their production.

The arbitrator had strayed far beyond the scope of the arbitration. A requirement that an employer disclose its contractual terms for benefits to its supervisors in a proceeding to which they are not a party, or else face an order that they provide similar benefits to their Union production and maintenance employees, has no basis in reality, law, or industry practice. Certainly no such requirement is contained in the Agreement between the Company and the Union. What the arbitrator has wrought here not only alters and amends the collective bargaining agreement but far exceeds the permissible powers of the

10

arbitrator. Were it applied generally in the marketplace, it would wreak consternation and havoc throughout American industry. The award amounts to nothing more than the arbitrator's personal brand of justice with which we do not agree.

III.

Accordingly, the arbitrator's decision conflicts with the express provisions of the Agreement between the Company and the Union. The arbitrator has written into the contract a provision obligating the Company to pay its Union employees voluntary retirement benefits to which indisputably it never agreed and as to which the Union employees concededly were not entitled.4  The arbitrator's effort to justify the alteration of the collective bargaining agreement on the basis of an irrelevant discrimination clause in the Agreement is unreasonable and impermissible. The arbitrator has exceeded the scope of the arbitration provision and his decision fails to draw its essence from that Agreement.5

The judgment of the District Court will be reversed and the case remanded with direction to the District Court to vacate the award. Costs taxed against the appellee Union.
_____

4. In Appalachin Regional Health Care, Inc. v. United Steelworkers of America, AFL-CIO, Local 14398, 245 F.3d 601, 605 (6th Cir.), cert. denied 122 S. Ct. 350 (2001), the court vacated an arbitrator's award because it conflicted with the express provisions of the collective bargaining agreement between the Company and the Union. The court stated: "Even if we were to credit the arbitrator's construction of the Agreement as against its conflict with express provisions, we would still have to vacate
the award as it imports notions not found in the Agreement itself." Id. at 606.

5. A reviewing court can set aside an arbitration award if enforcement of the award violates public policy. Eastern Assoc. Coal Corp., 531 U.S. at 62-63; Exxon Shipping Co., 73 F.3d at 1291. An award can also be overturned if the arbitrator's decision is not supported by the record. United Indus. Workers v. Virgin Islands, 987 F.2d 162, 170 (3d Cir. 1993). In light of our ultimate disposition, we need not reach the Company's alternative arguments that the arbitration award should be vacated because it violated public policy or that the arbitrator's decision
was unsupported by the record.

11

ALITO, Circuit Judge, dissenting.

Just last Term, the Supreme Court reminded us how narrow our proper scope of review is in a case such as this. In Eastern Associated Coal Corporation v. United Mine Workers of America, 531 U.S. 57 (2000), the Court wrote that when an "employer and union have granted to the arbitrator the authority to interpret the meaning of their contract's language," "[t]hey have `bargained for' the `arbitrator's construction' of their agreement, .. . [a]nd courts will set aside the arbitrator's interpretation of what their agreement means only in rare instances." 531 U.S. at 61–62 (citation omitted). The Court continued:

> Of course, an arbitrator's award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Paperworkers v. Misco, Inc., 484 U.S. 29, 38 (1987). "But as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the fact that "a court is convinced he committed serious error does not suffice to overturn his decision." Ibid.

Eastern Associated Coal Corporation, 531 U.S. at 62; see also Major League Baseball Players Association v. Garvey, 121 S. Ct. 1724, 1728 (2001).

The majority in this case overturns the arbitrator's decision because the majority strongly disagrees with his interpretation of the collective bargaining agreement. The arbitrator held that the collective bargaining agreement obligates the employer to provide voluntary retirement benefits to union-member employees on the same terms as supervisors. In so construing the agreement, the arbitrator relied on article 1, section 3 of the agreement, the so-called anti-discrimination provision, which states that the company may not "discriminate" against "any employee because of membership or non-membership in the Union." Tracing this clause to Sections 8(a) and (b) of the National Labor Relations Act, 29 U.S.C. S 158(a) and (b), the majority disagrees with the arbitrator's interpretation, reasoning that "[b]ecause supervisors are not `employees' under the NLRA for purposes of collective bargaining, an employer's

12

affording retirement benefits to supervisors but not providing them to union member employees cannot possibly constitute discrimination between employees under the anti-discrimination section of the Agreement." Maj. Op. at 9-10. The majority goes on to observe that the arbitrator's reasoning is supported by "neither the law nor industry practice" and "is highly impractical, costly and may even be unmanageable" for some companies. Maj. Op at 10.

I find the majority's interpretation of the collective bargaining agreement more persuasive than the arbitrator's, but I cannot agree that the arbitrator's decision did not "draw its essence from the contract" or that the arbitrator was not "even arguably construing the contract." As noted, the arbitrator's decision drew its essence from and was based on a construction of the anti-discrimination section. That the arbitrator probably misconstrued that provision is beside the point. The parties bargained for the arbitrator's construction of the agreement, and that is what they got. By intervening to rescue the Pennsylvania Power Company from one of the consequences of its bargain, the majority has exceeded the proper scope of our court's authority. I must therefore respectfully dissent.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13