**DAUPHIN PRECISION TOOL, Appellant**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Local Union 1688–13, District # 10.**

**No. 08–2598.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 9, 2009.

Filed: July 15, 2009.

---

Kandice J. Giurintano, Esq., Brian F. Jackson, Esq., McNees, Wallace & Nurick, Harrisburg, PA, for Appellant.

Robert D. Clark, Esq., United Steelworkers Of America, Pittsburgh, PA, Debra A. Jensen, Esq., Michael McGurrin,

Esq., Galfand Berger, Philadelphia, PA, for Appellee.

Before: SLOVITER, AMBRO and JORDAN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Dauphin Precision Tools, LLC ("Dauphin") appeals the District Court's decision to enforce an arbitration award. Because the arbitrator's decision was adequately based on the collective bargaining agreement ("CBA") and factual record, and because Dauphin has failed to make a clear showing that the arbitrator was biased, we will affirm.

## I.  Background

Dauphin and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL–CIO/CLC [1] (the "Union") entered into a CBA setting forth the terms and conditions of employment at Dauphin's manufacturing facilities in Millersburg, Pennsylvania.  The CBA contained an absentee policy pursuant to which employees were subject to progressively more significant disciplinary action as they accumulated absentee hours.[2]  At twenty-four absentee hours, employees received verbal counseling; at thirty-six absentee hours, employees received a written warning; at forty absentee hours, employees received a second written warning; and at more than forty absentee hours, employees were subject to termination. The CBA also contained a vacation policy, which allowed employees to substitute one day of vacation for one day of illness with proper notice to the company, and an arbitration clause.

Timothy Tschopp was employed by Dauphin as a shot blast operator.  In 2004, Tschopp missed twenty-two days of work. On nine of those days, Tschopp notified Dauphin that he was taking vacation time ("proper vacation days").  On ten of the days he missed, Tschopp failed to give Dauphin proper notice but had unused vacation days to cover his absences ("improper vacation days").  And on three of the days he missed, Tschopp did not have vacation to cover his absences ("uncovered absences").  Tschopp received six verbal and two written warnings for his absenteeism in 2004.

In 2005, Tschopp was absent for twenty days, five of which were proper vacation days and fifteen of which were improper vacation days.  Tschopp was also granted leave under the Family Medical Leave Act ("FMLA") to seek treatment for a medical condition.  He was given both verbal and written warnings for his absenteeism in 2005.  During March, April, and May of 2006, Tschopp missed 28 days of work.  Of those, six were proper vacation days, sixteen were improper vacation days, and six were uncovered absences.  At the end of April, following Tschopp's fifth uncovered absence, Dauphin gave Tschopp both a written and verbal warning regarding his absenteeism.  Dauphin also provided Tschopp with the paperwork necessary to apply for FMLA leave in case it was needed.  Tschopp did not fill out the FMLA paperwork, and was absent from work again on May 8.  Following that uncovered

---

1.  Although the caption lists the appellee as "United Steel Workers of America, AFL–CIO/CLC," appellee has clarified that its correct name is United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL–CIO/CLC.  (Appellee's br. pg. 2 n. 1.)

2.  The policy did not define what constituted an "absentee hour."

absence, Dauphin terminated Tschopp under the terms of the absentee policy.

In response to Tschopp's discharge, the Union filed a grievance and ultimately initiated arbitration proceedings. An arbitration hearing was held on November 24, 2006, before Arbitrator Patrick McFadden. Dauphin was represented by Company President William F. Coyle, Jr., and the Union was represented by Sub-district Director Joseph B. Pozza. During the proceedings, Coyle's behavior began to frustrate McFadden, prompting McFadden to slap his hand on the table and say to Coyle, "Now I know what kind of employer you are." Coyle asked for a sidebar and requested that McFadden recuse himself from the arbitration proceedings. He also asked that the proceedings be rescheduled so he could bring counsel to represent Dauphin. McFadden denied both of Coyle's requests and continued with the hearing.

McFadden ultimately issued an opinion finding for the Union and ordering Dauphin to reinstate Tschopp with back pay and benefits. In his opinion, McFadden stated that collective bargaining agreements are subject to an implied "just cause" requirement for disciplinary action, and concluded that because Dauphin knew of Tschopp's lingering health problems and had created an expectation that it would not strictly enforce its absentee policy, its decision to terminate Tschopp based on the absentee policy was without just cause. As McFadden put it, "[i]n the event a company has control regarding a policy or standard and fails to enforce it uniformly over the course of time, [i]t may not [then] one day decide to arbitrarily and unilater-

ally begin to now apply and enforce such standards [without] first providing appropriate notice and warning to all employees affected...." (App. at 146.)

Dauphin filed suit in the Middle District of Pennsylvania asking the Court to vacate McFadden's decision because it did not draw its essence from the CBA and because McFadden had demonstrated bias against Dauphin. Both Dauphin and the Union filed motions for summary judgment, and the District Court granted summary judgment to the Union. Dauphin filed a timely appeal and makes the same arguments it made before the District Court.

## II. Discussion[3]

When parties to a CBA elect to have their disputes settled through arbitration, our review of a resulting arbitration decision is extraordinarily limited. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001). We do not review the merits of the decision or correct factual or legal errors. *Id.*; *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004). Rather, "we must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and we may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir.1996) (quoting *News Am. Publ'ns, Inc. v. Newark Typographi-*

---

**3.** The District Court reviewed the Arbitrator's Award pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. We have jurisdiction over the appeal of the District Court's final order pursuant to 28 U.S.C. § 1291. Our review of the District Court's ruling is plenary, and we apply the same standard applied by the District Court. *Pennsylvania Power Co. v. Local Union No. 272 of the Int'l Bhd. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir.2001).

*cal Union, Local 103*, 918 F.2d 21, 24 (3d Cir.1990)).

We may also vacate an arbitration award if there is a clear showing of bias. *United Indus. Workers v. Gov't of the V.I.*, 987 F.2d 162, 171 (3d Cir.1993); *High Concrete Structures, Inc. of N.J. v. United Elec., Radio & Mach. Workers of Am., Local 166*, 879 F.2d 1215, 1218 (3d Cir.1989). In order to show the "evident partiality" necessary to set aside an arbitrator's award, " 'the challenging party must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration.' " *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n. 30 (3d Cir.1994) (quoting *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989)).

Although we are troubled by the idea that a company which has given repeated warnings to a chronically absent employee finds itself being told that it cannot terminate that employee without providing some further notice—and it is not clear what sort of additional notice would satisfy the Union and the arbitrator [4]—we cannot conclude that McFadden's decision in this case is entirely unsupported by the record or in manifest disregard of the CBA. McFadden interpreted the CBA to require Dauphin to have just cause to terminate one of its employees, and, indeed, the CBA does contain an explicit "just cause" requirement that applies to a loss of seniority or employment.[5] McFadden relied on the factual record for his findings that Dauphin was

aware that Tschopp was suffering from health problems and had not strictly enforced its policies. And, he concluded that Dauphin lacked just cause to fire Tschopp, based on his interpretation of the CBA and his factual findings. Although Dauphin raises compelling arguments calling into question the correctness of McFadden's interpretation of the CBA and his findings of fact, we may not review the merits of the arbitration award. To do so "would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective-bargaining agreement." *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 41 n. 10, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Our review is limited to determining whether the arbitration award finds any support in the record, and, in this case, thin though the support may be, it does.

Dauphin has also failed to make a clear showing of bias. During the arbitration proceeding, McFadden exposed his frustration, saying to Coyle, "Now I know what kind of employer you are." (App. 302.) While that statement was unnecessary and probably unwise, it is not a clear showing of bias. McFadden testified at his deposition that he had lost control of the arbitration proceedings due to Coyle's demeanor, and his actions were calculated to regain control and move the proceedings along. He also testified that he and Coyle maintained a cordial relationship after the incident. McFadden's statement may have been ill-advised but, without ad-

---

4. One likely outcome of the approach taken by the Union and arbitrator in this instance is to encourage employers to be less than forbearing when an employee begins missing work, a result that seems of dubious benefit to either employers or employees.

5. The CBA states that "[a]n employee shall lose his/her seniority and/or employment if:

... (b) He/she is discharged for just cause." (App. 46 (Article XVIII, Section 7).) McFadden did not rely on this provision but seems to have based his ruling on the premise that collective bargaining agreements are generally subject to an implied "just cause" requirement.

ditional evidence of bias, it is insufficient to compel a reasonable person to conclude that McFadden was partial toward the Union.

## III.   Conclusion

The parties to this case agreed to settle their disputes through arbitration. The arbitration award they received in this matter is based on the arbitrator's interpretation of the CBA and factual record, and Dauphin has not shown that the arbitrator was clearly biased. Accordingly, we will affirm the District Court's decision to enforce the arbitration award.