**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1208
_____

EAST COAST DISTRIBUTORS INC.,

                                                    Appellant

v.

LOCAL 863, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS ,WAREHOUSERS AND HELPERS OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-08-cv-05297)
District Judge:  Honorable Joel A. Pisano
_____

Submitted Under Third Circuit LAR 34.1
March 10, 2011
_____

Before:  SCIRICA, AMBRO and VANASKIE, Circuit Judges

(Opinion Filed: April 11, 2011)
_____

OPINION OF THE COURT
_____

VANASKIE, Circuit Judge.

        East Coast Distributors ("East Coast") challenges an arbitration award in favor of

Local 863, International Brotherhood of Teamsters ("Local 863").  The District Court

confirmed the award, and we will affirm the Judgment of the District Court.

I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we relate only those facts necessary to our analysis.

Since 2002, East Coast has operated a New Jersey warehouse whose workers are represented by Local 863. At all relevant times, the collective bargaining agreement between East Coast and Local 863 has provided that "[w]hen a new branch, warehouse or terminal is opened at any location, [East Coast] shall offer to all persons covered by this Agreement the opportunity to transfer to the new branch, warehouse or terminal in the order of his/her Company or payroll seniority." (A. 36.) The agreement further provided that it was "binding upon any entity who, for whom, or with whom, by contract, subcontract, service agreement, merger, acquisition, co-venture or any other business organization or relationship, [East Coast] performs or supplies labor to perform . . . any work covered by this Agreement." (A. 42.) In 2005, a new warehouse opened in Pennsylvania. Frank Miraglia, a principal of East Coast, formed a new company called Benchmark Distributors to operate the Pennsylvania warehouse.

According to Local 863, its President, Louis Sanchez, informed Miraglia that certain Local 863 members working at the New Jersey facility wanted to transfer to Pennsylvania, but that Miraglia was not receptive to transfers. Miraglia denied that Sanchez informed him that Local 863 wanted to work at the Pennsylvania warehouse, but he did recall individual union members asking him if they could transfer. Miraglia gave the Pennsylvania warehouse's fax number to those workers, but he did not do anything

2

else to facilitate transfers. Ultimately, a union other than Local 863 became the bargaining representative of employees at the Pennsylvania facility.

Local 863 subsequently filed for arbitration, alleging that East Coast violated the collective bargaining agreement by denying interested Local 863 members a chance to transfer from New Jersey to Pennsylvania and by failing to give Local 863 the work at the Pennsylvania warehouse. The arbitrator agreed that East Coast violated the agreement and rendered a remedial award directing East Coast to compensate Local 863 for lost union dues.

East Coast then filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). The NLRB's Office of General Counsel issued an advice memorandum stating that East Coast's "charges should be dismissed because the Union's claims are not baseless and retaliatory, nor do they seek an unlawful objective." (A. 110.) The NLRB denied East Coast's subsequent appeal, explaining that "neither the grievance nor the arbitration award conflict with any prior Board determination nor are they contrary to the [National Labor Relations] Act." (A. 113-14.)

East Coast subsequently appealed to the United States District Court for the District of New Jersey. The District Court confirmed the arbitrator's finding that East Coast violated the collective bargaining agreement. The Court, however, deemed the remedial award ambiguous, and remanded the case to the arbitrator for clarification of the remedy. The arbitrator clarified the award by explaining the extent of lost dues East Coast owed. The award did not require the Pennsylvania facility to recognize Local 863 as the representative of the employees there.

East Coast and Benchmark Distributors filed new charges with the NLRB challenging the clarified arbitration award. Again, the NLRB's Office of General Counsel recommended dismissing the charges, and East Coast's subsequent appeal was denied. The NLRB's Office of Appeals explained that "[n]either the grievance nor the arbitration award conflict with any prior Board determination, nor are they contrary to the [National Labor Relations] Act or national labor policy." (A. 436-37.)

East Coast attempted to vacate the clarified remedial award in the District Court, but the Court confirmed the award. East Coast now appeals.

## II.

The District Court had jurisdiction pursuant to 29 U.S.C. § 185. We have jurisdiction under 28 U.S.C. § 1291. "Our review is plenary, and we apply the same standard as the District Court in reviewing the arbitration award." *Pa. Power Co. v. Local Union No. 272, Int'l Bhd. Of Elec. Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir. 2001), *cert. denied*, 536 U.S. 959 (2002).

As the District Court correctly noted, a court's review of an arbitration award is especially deferential. "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("*Misco*") (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Id.* at 38. "[A]s long as the arbitrator is even

4

arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* "As with any contract, however, a court may not enforce a collective bargaining agreement that is contrary to public policy." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983).

East Coast argues that the arbitration award violates public policy because it stems from an unlawful demand that Local 863 represent the employees at the Pennsylvania warehouse without first demonstrating its majority status there. Along similar lines, East Coast further argues that Local 863 waived its right to relief by admitting to the arbitrator that Local 863 did not have a right to represent employees at the Pennsylvania warehouse without first establishing a majority.

It is true that the NLRB requires "that unions must represent a majority of the employees in a new store" for the union to be recognized as the collective bargaining representative at the new facility. *Houston Div. of the Kroger Co.*, 219 N.L.R.B. 388, 389 (1975). The arbitrator, however, explained that he awarded Local 863 damages

> [b]ecause the 863-East Coast Agreement required certain conduct or actions by East Coast; offering [New Jersey] employees the opportunity to transfer to the new facility and giving the work at the new facility to Local 863. When East Coast failed to fulfill those contractual requirements, it breached its Agreement with Local 863 and became liable, without further foundation, for the resulting damages.

(A. 401.) Contrary to East Coast's argument, the award did not result from East Coast's failure to automatically recognize Local 863 without the union's first demonstrating

5

majority status at the Pennsylvania warehouse. Rather, East Coast was ordered to pay damages because the arbitrator found that the company violated the collective bargaining agreement by failing to give Local 863 members an opportunity to transfer to the Pennsylvania warehouse, thereby denying Local 863 a chance to obtain recognition there. In order to set aside an arbitrator's interpretation of a collective bargaining agreement, "the contract as interpreted [must] violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Misco*, 484 U.S. at 43 (internal quotation marks omitted). East Coast has not shown that the arbitrator's award contravened such a public policy, nor has Local 863 waived its claim by admitting that it seeks only damages.

The NLRB's rejection of East Coast's challenge to the clarified arbitration award supports our conclusion that the award is consistent with public policy. "[T]he NLRB has the primary responsibility for developing and applying national labor policy." *N.L.R.B. v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786 (1990). The NLRB determined that the clarified award does not violate national labor law or policy. We agree.

## III.

For the foregoing reasons, we will affirm the Judgment of the District Court.