

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-2005

# Brentwood Med Assoc v. UMWA

Precedential or Non-Precedential: Precedential

Docket No. 04-1955

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Brentwood Med Assoc v. UMWA" (2005). *2005 Decisions.* Paper 1525.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1525

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-1955
_____

BRENTWOOD MEDICAL ASSOCIATES

<u>Appellant</u>

v.

UNITED MINE WORKERS OF AMERICA

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 03-cv-1258)
District Judge: Hon. Arthur J. Schwab

_____

Argued December 7, 2004

BEFORE: AMBRO, and VAN ANTWERPEN, <u>Circuit
Judges</u> and SHADUR,[1] <u>Senior District Judge</u>

---

[1] Honorable Milton I. Shadur, Senior United States District
Judge for the Northern District of Illinois, sitting by designation.

(Filed   January 28, 2005 )

James A. Prozzi, Esq. (Argued)
Jackson Lewis LLP
One PPG Place, 28th Floor
Pittsburgh, Pennsylvania 15222

*Counsel for Appellant*

Michael J. Healey, Esq. (Argued)
Douglas B. McKechnie, Esq.
Healey & Hornack, P.C.
1100 Liberty Avenue
The Pennsylvian,  Suite C-2
Pittsburgh, Pennsylvania 15222

*Counsel for Appellee*

_____

OPINION

_____

VAN ANTWERPEN, <u>Circuit Judge</u>

The Federal Arbitration Act codifies Congress' desire to uphold private arbitration agreements that produce prompt and fair dispute resolution without involving the courts.  In furtherance of this interest, a court must scrupulously honor the bargains implicit in such agreements and interfere only when an award is severely problematic.  *See, e.g., Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220,

223 (1987). This appeal asks us to determine whether or not an arbitration award should be upheld where an arbitrator inexplicably cites language in his decision that cannot be found in the relevant collective bargaining agreement. Because we conclude that such a mistake, while glaring, does not fatally taint the balance of the arbitrator's decision in this case, we affirm the decision of the District Court upholding the award.

## I. Factual Background

Brentwood Medical Associates ("BMA") and the United Mine Workers of America ("UMWA") are parties to a collective bargaining agreement that covers the terms and conditions of employment for a unit of employees at BMA's facility in Brentwood, Pennsylvania. This agreement provides a mandatory grievance and arbitration procedure for disputes between the parties. Arbitration of grievances is conducted by an arbitrator chosen from a panel, and that arbitrator's decision "shall be final and binding upon the employees, the Union and the Employer." Joint Appendix ("J.A.") at 48. Under the agreement, an arbitrator is explicitly prevented from "add[ing] to, subtract[ing] from, or modify[ing] in any way any of the provisions, terms [or] conditions of [the] Agreement." Id.

The grievance that gave rise to this appeal alleged that BMA violated the collective bargaining agreement when it refused to allow a union member to exercise her seniority rights under Article VIII. In February, 2001, Ms. Denise Cope (a member of UMWA) was offered the position of

3

Charge Entry Associate, for which she left her position as a Phlebotomist. On November 11, 2002, BMA announced it would be abolishing the Charge Entry Associate classification effective November 15, 2002. Ms. Cope requested permission to "bump"[2] outside her classification of Charge Entry Associate and return to her position as a Phlebotomist, thereby displacing the least senior person in that classification. This request was refused, and BMA instead offered Ms. Cope the position of Front Office Clerk.[3]

On November 14, 2002, Ms. Cope filed a grievance with BMA pursuant to the collective bargaining agreement, claiming that BMA had violated Article VIII, Sections 1, 2, and 10.[4] On February 3, 2003, BMA denied this grievance.

---

[2] "Bumping" is the process by which an employee who had less seniority than another is forced out so that a more senior employee can take junior employee's position and avoid layoff himself. *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 396 (3d Cir. 1976).

[3] The arbitrator found that Ms. Cope had greater seniority than twenty-eight of the thirty-five employees in the bargaining unit. J.A. at 71.

[4] Article VIII (Seniority) reads, in relevant part:

Section 1. Seniority shall be defined as the years, months and days an employee has worked with the Employer *in the bargaining unit* since the employee's last date of hire by the Employer. . .

4

BMA and UMWA then proceeded to binding arbitration pursuant to Article XIV of the collective bargaining agreement. Arbitrator John M. Felice was selected to conduct the arbitration, and on August 6, 2003, he issued a decision sustaining the grievance and ordering BMA to permit Ms.

_____

Section 2. The parties recognize the principal [sic] of seniority as a factor in layoffs, recalls and certain types of promotional opportunities provided the employees is otherwise fully qualified. Seniority shall, however, apply *only as expressly provided for* in this Agreement.

Section 10. Layoff and Recalls. In the event that the Employer determines to reduce the work force in classification covered by this Agreement or to abolish a classification, the Employer will, in its sole discretion, determine which positions are to be affected and the number of employee positions to be reduced, including the number of full time and part time positions which will be affected in each classification and/or department. The reduction will be accomplished in inverse order of seniority in the classifications affected, provided that the employees to be retained have the skill, qualifications, ability and physical fitness to perform all of the work remaining in that classification without training, and will assume the remaining schedule. The Employer will send the Union a list of employees laid off within twenty-four (24) hours of the layoff. The Employer may exempt employees with special skills or abilities from any reduction in force or layoff.

(emphasis added).

5

Cope to exercise her seniority rights and bump the least senior Phlebotomist. J.A. at 68-75. In that decision, the arbitrator asked rhetorically why, if bumping was not permitted under the collective bargaining agreement as BMA contended, was the following language governing bumping present in Article VIII, Section 10:

". . . employees who exercise seniority rights and bump must have the skill, qualifications, ability and physical fitness to perform all of the work remaining in that classification. . ."

 J.A. at 73-4. This language does not exist in either Article VIII, Section 10, or anywhere else in the collective bargaining agreement.

BMA filed a complaint with the United States District Court for the Western District of Pennsylvania pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 *et seq*, seeking to vacate the award. The parties filed cross-motions for summary judgment, and the District Court granted summary judgment in favor of UMWA on March 12, 2004. Adopting the appropriate deferential standard of review, the District Court concluded that the parties had agreed that (1) an arbitration award would be final and binding, and (2) the arbitrator's decision reached a rational result consistent with the terms of the agreement. J.A. at 06-7.

## II. Jurisdiction and Standard of Review

BMA filed a timely Notice of Appeal on April 5, 2004.

6

We have jurisdiction to review this final district court order pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's decision resolving cross motions for summary judgment. *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 994 (3d Cir. 1997), (quoting *United Parcel Service, Inc. v. Int'l Bhd. of Teamsters Local No. 430*, 55 F.3d 138, 140 (3d Cir. 1995)).

A collective bargaining agreement represents a contractual accord reached between an employer and its employees. If such a contract includes an arbitration clause, it is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement. It is thus not the role of a court to correct factual or legal errors made by an arbitrator. *Major League Umpires Ass'n v. American League of Professional Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004). A district court may determine only whether or not an arbitrator's award "draws its essence" from the parties' collective bargaining agreement, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987), and we apply this same standard in reviewing the arbitration award. *Pennsylvania Power Co. v. Local Union No. 272 of the Int'l Bhd. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir. 2001). Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.

An award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its

language, its context, and any other indicia of the parties' intention. *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379-80 (3d Cir. 1995). "As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction." *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993) (internal quotation marks omitted). Therefore, we will not disturb an arbitration award "even if we find the basis for it to be ambiguous or disagree[] with [the arbitrator's] conclusions under the law." *Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004), (quoting *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436, 1441 (3d Cir.1992)).

### III. Discussion

There is a strong presumption under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As such, an award is presumed valid unless it is affirmatively shown to be otherwise, and the validity of an award is subject to attack

8

only on those grounds listed in 9 U.S.C. § 10,[5] or if enforcement of the award is contrary to public policy. *Exxon Shipping Co.*, 993 F.2d at 360, (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber Workers*, 461 U.S. 757, 766 (1983)).

BMA contends that the arbitrator exceeded his authority when he added language to the collective bargaining agreement supporting his conclusion that Ms. Cope could bump a less senior employee in a different classification,

---

[5] 9 U.S.C. § 10 states, in relevant part:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

which signals a violation of 9 U.S.C. § 10(a)(4). If this alleged overstep by the arbitrator is the only leg that supports his decision, it is within our discretion to vacate the award. Therefore, the narrow issue before us is whether the arbitrator's conclusion is supported, in any way, by a rational interpretation of the collective bargaining agreement. We reiterate that it is our duty to resist the urge to conduct *de novo* review of the award on the merits. *See United Paperworkers Union*, 484 U.S. at 36 (we "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."). Rather, we ask merely whether the parties to the collective bargaining agreement got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second would produce a rational award. BMA contends that the arbitrator's reference to the language not found in the collective bargaining agreement fatally taints the award, because this reference is essential to the arbitrator's ultimate conclusion and is inseparable from the remainder of the award. As such, our focus must be on whether the arbitrator's discussion can still support the award if we excise the anomalous language. We believe that it does provide such support.

The arbitrator first stated that he was confronted with contrary interpretations of Article VIII, Section 10 offered by BMA and UMWA. As framed by the parties, the issue before the arbitrator was essentially whether use of the plural term "classifications" in Article VIII, Section 10 enables employees affected by layoff to exercise their seniority rights

by bumping into another classification. After taking notice of the fact that arbitrators generally hold seniority provisions to be at the heart of any collective bargaining agreement, he set about reviewing the agreement's various provisions. The arbitrator pronounced that a "conjunctive interpretation of Article VIII of the [collective bargaining agreement] leads to the inescapable conclusion that the parties have consistently recognized seniority preference. . ." J.A. at 73. This is born out by a review of the collective bargaining agreement. Article VIII, Section 1, *supra.*, expressly identifies seniority in terms of the *entire bargaining unit*. Section 2 of that Article goes on to say that seniority rights apply only as *expressly provided for* in the agreement. This is a clear basis upon which the arbitrator could have concluded that seniority preference existed unit-wide.[6] This alone provides ample basis to uphold the award.

In additional support for his conclusion, the arbitrator cited several provisions of the agreement:

For example, Section 1 defines seniority as "bargaining unit-wide" and not within classification. Section 2 provides that the principle of seniority is a factor in layoffs, recalls and certain types of promotional opportunities provided the employee is fully qualified. Section 5 specifies that in filling

---

[6] We cannot and do not pass judgment on the wisdom of the arbitrator's conclusion. All we are empowered to determine here is whether or not his award draws its essence from the collective bargaining agreement.

11

vacancies when the qualifications of two (2) or more applicants are relatively equal, preference will be based on seniority. Section 11, specifies that when the Employer decides to affect a recall from layoff, it will "consider employees with recall rights first within the classification from which they were laid off, then by seniority, the most senior first, based upon the position preferences on the designated forms." This proviso obviously entitles senior employees to be recalled in reverse order of layoff to a position other than to the position from which they were laid off, provided they are qualified.

Id. Furthermore, he explained:

the language "in inverse order of seniority in the classification affected" in Article VIII, Section 10 of the [collective bargaining agreement] cannot be interpreted to prohibit senior employees affected by a layoff from exercising their "bargaining unit-wide" seniority rights and bump less senior employees outside of their classification, provided they are qualified.

J.A. at 74. The arbitrator concluded his review by noting that no provision in Article VIII of the agreement would prevent bumping bargaining unit-wide. J.A. at 75.

After reviewing the totality of the arbitrator's decision, we are confident that his award does not rest solely upon the aberrant language added by the arbitrator. While it is true that the clearest support for the

12

arbitrator's conclusion comes from the language he interpolated,[7] there is sufficient substance in the remainder of the discussion to pass the minimum rationality threshold.  Faced with what he perceived as an incongruity between BMA's position and the bargaining unit-wide seniority rights of employees, the arbitrator attempted to construe together, and then give effect to, all provisions of the agreement.  While BMA may take issue with his contractual interpretation, this is not sufficient to justify vacatur of the award by this Court.  *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) ("if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.") (internal quotations omitted).

BMA's entire argument rests on the arbitrator's inexplicable quotation of language that was not present in the agreement.  Certainly, this was a mistake.  Moreover, this mistake clearly violates Article XIV, Section 1's prohibition against the arbitrator adding to, subtracting from, or modifying the agreement.  Nonetheless, this error is insufficient to warrant

---

[7] Our learned colleague reiterates in his dissent that it is undisputed that the arbitrator modified agreement language in violation of Article XIV, Section 1, and that the arbitrator therefore exceeded his contractual authority.  Had this been the only basis for his conclusion, we would agree that vacatur is appropriate.  However, even if we were to kick out the "bum leg" of the arbitrator's award, there are still many others upon which this award can stand.  We do not agree with the dissent's assertion that, regardless of what other justifications there are for his decision, the arbitrator's single error alone allows us to void the award *in toto*.

vacation of the award. "Full-blown judicial review" of the arbitrator's decision would annul the bargain between BMA and UMWA for an arbitrator's construction of their agreement and replace it with a judicial interpretation that was not bargained for. *Stroehmann Bakeries, Inc.*, 969 F.2d at 1441. Only where there is manifest disregard for the agreement can we override an arbitrator. Because the remainder of the justification for the award offered by the arbitrator was capable of separation from the aberrant language, his decision reflects an interpretation of the contract that is at least minimally rooted in the collective bargaining agreement, and not his "own brand of industrial justice." *United Paperworkers Intern. Union,* 484 U.S. at 36. Consequently, the arbitrator's error was harmless, since he would have arrived at the conclusion he reached here, even absent the discussion of the aberrant language. As such, our inquiry into the award has reached its jurisdictional limit, and we must uphold it.

## IV. Conclusion

For the foregoing reasons, we affirm the decision of the District Court.

AMBRO, <u>Circuit Judge</u>, Dissenting


I believe this case presents the rare situation in which it is appropriate for our Court to vacate an arbitration award. Therefore, I respectfully dissent.

Although our review of arbitration awards is—as stated by my colleagues in the majority—highly deferential, courts are nonetheless "neither entitled nor encouraged to simply 'rubber stamp' the interpretations and decisions of arbitrators." *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir. 1996). The federal courts retain a significant role in the review of labor arbitration awards and may vacate awards under certain circumstances. *Id.* at 113–14. One such circumstance occurs when the arbitrator shows "manifest disregard" for the terms of the collective bargaining agreement ("CBA" or "Agreement") at issue. *See, e.g.*, *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004), *cert. denied*, ___ S.Ct. ___, 2005 WL 45841 ("[A]n award may be vacated if the arbitrator demonstrates manifest disregard for the CBA."); *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986) ("[I]n that rarest case of manifest disregard of the [collective bargaining] agreement, the [court] must draw the line.") (internal quotation omitted).

An arbitrator derives her/his authority from the terms of the CBA and the scope of the issues submitted by the parties. *Major League*

15

*Umpires Ass'n*, 357 F.3d at 279. In this case, the CBA provides that an arbitrator's decision is final and binding on the parties. CBA Art. XIV § 1 (Step 4). Importantly, the CBA also explicitly states that "[t]he arbitrator shall not *add to, subtract from, or modify in any way* any of the provisions, terms o[r] conditions of this Agreement." *Id.* (emphasis added). Despite this leave-no-doubt language, it is undisputed that, in rendering an arbitration award in favor of the Union, the arbitrator modified the language in the CBA to include a provision allowing for "bumping" where no such provision exists in the actual text of the CBA.[8] In doing so, the arbitrator violated the provision of the CBA that prohibited him from modifying its terms. He thus exceeded the scope of his contractually delegated authority. *Cf. Pennsylvania Power Co. v. Local Union No. 272*, 276 F.3d 174, 179 (3d Cir. 2001) (vacating an arbitration award because the arbitrator exceeded his powers under the CBA by altering the CBA "in direct violation of [the CBA's] provision that he had no power to do so."); *see also* 9 U.S.C. § 10(a)(4) (providing that a federal court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."). Because, "[s]imply stated, an arbitrator may not venture beyond the bounds of his or her authority," *Major League Umpires Ass'n*, 357 F.2d at 279 (internal quotation omitted), I would vacate the arbitration award on this ground alone.

My colleagues in the majority recognize that the arbitrator's "inexplicable quotation" of language not in the CBA was a clear violation

_____

[8]In fact, the Union had unsuccessfully attempted to include a bumping provision in the CBA when negotiating its terms.

16

of Article IV § 1 of that Agreement.  They nevertheless conclude that the arbitrator's award cannot be vacated because it was rationally based on the language of the CBA.  I agree, of course, that an arbitration award must be upheld if it is in "any rational way" related to the language of the agreement.  *See, e.g.*, *id.* at 280.  But I do not agree that this standard has been met here.

The arbitrator believed there was an incongruity between Brentwood Medical Associates' ("BMA") position that senior employees had no right to bump less senior employees in other work classifications and the bargaining-unit seniority rights provided for in the CBA.  J.A. at 74.  In resolving this purported incongruity and finding that the employee here could exercise her seniority rights and bump an employee in another classification, the arbitrator twice cited and discussed the language regarding the right to bump that *he wrote* into the very section of the CBA under review.  *Id.* at 73–74.  A comparison of the actual language of the CBA with the language used by the arbitrator (shown in bold) highlights the differences between the two.

| Text Used in Arbitrator's Decision | Page | Actual Text of Collective Bargaining Agreement | Section |
|---|---|---|---|

17

| | | | |
|---|---|---|---|
| "…employees **who exercise seniority rights and bump** must have the skill, qualifications, ability and physical fitness to perform all of the work remaining in that classification…" | J.A. 73,74 | "The reduction will be accomplished in inverse order of seniority in the classifications affected, <u>provided</u> that the employees to be retained must have the skill, qualifications, ability and physical fitness to perform all of the work remaining in that classification without training, and will assume the remaining schedule." | Art. VIII, § 10 |

This added language informed the arbitrator's belief (indeed it tipped the balance) that the position BMA took in the arbitration was inconsistent with the terms of the CBA, causing the arbitrator to question why language governing bumping was included in the agreement if, as BMA asserted, an employee whose classification was eliminated was not allowed to bump an employee in another classification.[9] There was but one problem—the

---

[9]The arbitrator wrote: "[I]f, as [BMA] asserts, reductions apply only '. . . in the inverse order of seniority in the classifications affected. . .'", why was the "following language [inserted] to govern bumping, to wit: '. . . employees who exercise seniority rights and bump must have the skill, qualifications, ability and physical fitness to perform all of the

language with which the arbitrator believed BMA's position was inconsistent *was not part of the CBA*.

I do not agree with my colleagues in the majority that the arbitrator's reference, at the end of his decision, to the "'plant-wide seniority' system . . . ingrained in Article VIII, Section 1 of the CBA", J.A. at 75, is sufficient to support a conclusion that the arbitrator's award draws its essence from the CBA notwithstanding his prior modification of the language of the agreement. The CBA defines seniority as bargaining unit-wide only generically as follows: "Seniority shall be defined as the years, months and days an employee has worked with the Employer in the *bargaining unit* since the employee's last date of hire by the Employer." CBA Art. VIII § 2 (emphasis added).

The underlying dispute in this case concerned whether an employee whose job classification had been abolished, and who was thus facing being laid off, could bump a less senior employee in another classification. The CBA contains a specific provision for "Layoff and Recalls," *see* CBA Art. VIII § 10, and, as discussed above, it is that section that the arbitrator misquoted. The arbitrator's award should not be upheld on the basis of the general language regarding bargaining-unit seniority in Article VIII, Section 1, when the arbitrator first rewrote the more specific language regarding layoffs that he should have been applying to resolve this dispute. To forgive the arbitrator's Humpty Dumpty approach to the specific provision in play by referring to a general statement on seniority is akin to decreeing that the general call for mercy expiates the specific commandment not to kill.

---

work remaining in that classification . . . [?]" J.A. at 74.

19

Even assuming that the arbitrator's added language could be separated from the rest of his decision, the award should still be vacated. When faced with the supposed disconnect between BMA's position that bumping outside of one's own classification should not be allowed and the bargaining-unit seniority rights outlined in the CBA, the arbitrator came down in favor of allowing bumping across classifications. He noted that there was no provision in Article VIII of the CBA, the section dealing with seniority, that would prohibit bumping. He also found that bumping across classifications was "consistent with arbitral authority which holds that, in the absence of any contract provision, it is almost universally recognized by arbitrators that senior employees who are governed by a 'plant-wide seniority' system, such as is imagined in Article VIII, Section 1 of the CBA[,] have the right to bump junior employees from their jobs in order to avoid their own layoff, provided they can perform the work of the junior employees." *Id.* at 75 (internal quotation omitted).

Far from there being an "absence of any contract provision," however, the CBA states that "[s]eniority shall . . . apply *only* as expressly provided for in this Agreement." CBA Art. VIII § 2 (emphasis added). In implying a right to bump because no contract provision prohibited bumping and because this result was consistent with general arbitration principles, the arbitrator again exceeded the scope of his powers by ignoring the CBA's ban on applying seniority "only as expressly provided" in the Agreement itself. Ignoring plain language—least of all language that set the arbitrator's authority—is a no-no of first rank. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Pennsylvania Power Co.*, 276 F.3d at 178.

20

In sum, the arbitrator in this case directly contradicted the plain language of the CBA and thus exceeded the scope of his powers by: (1) altering the language of the Agreement to include an express right to bump across classifications in defiance of the CBA provision prohibiting any modification of its language; and (2) reading into the CBA a right to bump because no provision of the CBA prohibited it in defiance of the CBA provision stating that seniority rights may only be applied as the CBA itself provides. To ignore the plain language of the CBA, and to rely on language not contained in it in reaching his decision, are the opposite of issuing an award that drew its essence from the CBA.

Our deferential standard of review in labor arbitration cases may mean that we uphold arbitration awards but for snow in August. But when an arbitrator rewrites a collective bargaining agreement as he did here (making manifest an utter disregard for the CBA's actual words), or finds a meaning to exist because it is not expressed, and we uphold either sleight-of-hand, "deference" becomes a "rubber stamp." If this arbitrator's award evades vacating, what award does not? I respectfully dissent.