NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2495
_____

ARMSTRONG COUNTY MEMORIAL HOSPITAL,

v.

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL
UNION AND ITS LOCAL UNION 158-06,
Appellants

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2-09-cv-1551)
District Judge:  Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2011
_____

Before: FUENTES and CHAGARES, <u>Circuit Judges</u>, and POLLAK, <u>Senior District
Judge</u>[*]

(Opinion filed March 14, 2011)
_____

OPINION
_____

---

[*] Honorable Louis H. Pollak, District Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

POLLAK, <u>District Judge</u>

This case arises from a labor arbitration between appellee Armstrong County Memorial Hospital ("Hospital") and appellant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO/CLC and USW, Local 158-06 ("Union"). The Union and Hospital are parties to a collective bargaining agreement ("CBA") which provides for binding arbitration. On January 1, 2009, during the term of the CBA, the Hospital implemented a policy prohibiting smoking anywhere on Hospital property. The Union filed a grievance challenging the policy as a violation of the CBA, and the dispute proceeded to arbitration. The arbitrator found in favor of the Union, and thereafter the Hospital brought an action in the Western District of Pennsylvania to vacate the arbitration award. Ruling on the parties' cross-motions for summary judgment, the District Court found that the arbitrator's decision contradicted the plain language of the CBA and therefore vacated the award. For the reasons that follow, we affirm the judgment of the District Court.

I.

In 1992, the Hospital implemented a "no smoking" policy within its buildings, except for the psychiatric unit. Under this policy, which remained in place until 2009, employees were permitted to smoke outside the buildings in designated smoking areas and in their personal vehicles while on Hospital property. Joint Appendix ("JA") at 91, 104. In 2007, the Hospital revised its mission statement, and in 2007 and early 2008 the Hospital held a series of meetings with employees and volunteers to discuss the new mission statement. In the meetings, Hospital administrators were confronted on a number

1

of occasions about the inconsistency of the Hospital having a mission statement which promoted healthy behavior, while it knowingly permitted and provided accommodations for employees to smoke on Hospital property.  JA 104.  Hospital administrators also heard frequent complaints that smokers did not stay in the designated smoking areas, causing smoke to come into patients' rooms and the Hospital's main entrance.  JA 93.

After conducting surveys regarding the number of smokers among Hospital employees and making inquiries regarding smoking policies at other local hospitals, the Hospital concluded that smoking on the Hospital campus created a significant health risk not only to smokers but also to patients, volunteers, and visitors.  JA 93.  In August 2008, the Hospital's Board of Directors directed the Hospital's administration to pursue a Tobacco Free Campus Policy ("TFC Policy").  Thereafter, Hospital administrators developed the new policy, which became effective January 1, 2009.  Under the policy, employees may not smoke anywhere on Hospital property, including in their private vehicles parked on Hospital property, and violators are subject to discipline up to and including termination.  JA 110.

In November 2008, the Hospital notified the Union of its intention to implement the TFC Policy.  JA 89.  The Union responded by filing a grievance on November 12, 2008, which charged that the new policy was "unreasonable" and that the Hospital had failed to raise this proposed change during earlier negotiations over the CBA.  JA 88-89. The Hospital implemented the TFC Policy as scheduled, and the Union submitted the grievance to arbitration.

The CBA took effect on June 23, 2008 and runs until June 22, 2011. JA 53. As relevant to this case, the CBA provides as follows:

ARTICLE 4 – MANAGEMENT RIGHTS

4.01 The functions and responsibilities of Management are retained and vested exclusively in the Employer. The rights reserved in the Employer include all matters of inherent managerial policy plus those necessitated by the unique nature of the Employer's operations. In the exercise of these rights, the Employer agrees that it will not violate the specific provisions of this Agreement.

4.02 The Employer reserves the right to establish, revise and administer reasonable policies and procedures, . . . to control and regulate the use of facilities, supplies, equipment, and other property of the Employer; . . . to make or change reasonable Employer rules, regulations, policies and practices, provided the Employer gives advance notice to the Union; . . . to establish or change standards; . . . and otherwise to help the Employer attain and maintain full operating efficiency and effectiveness of the Hospital to ensure that the parties promote the highest quality patient care and treatment possible.

4.05 The management rights set forth in this Article are by way of example and not by way of limitation and specifically are not limited by existing or "prior practices" or "side agreements" which existed prior to this Agreement and are not incorporated herein.

ARTICLE 23 – SAFETY

23.01 The Employer will make every effort to maintain its facilities and equipment in such physical condition so as to provide a safe and healthy work environment . . . .

JA 55, 72. The CBA also establishes a grievance and arbitration procedure. Under Section 14.04, an arbitrator's award "shall be final and binding upon both parties." In addition, Section 14.04 provides that an arbitrator "shall have no power to add to, subtract from, or modify any provision of this Agreement." JA 65.

3

On September 2, 2009, the arbitrator held a hearing at which the parties were given an opportunity to present evidence, examine witnesses, and argue their respective positions. JA 91. On October 22, 2009, the arbitrator issued an opinion and award in favor of the Union. The crux of the arbitrator's opinion is as follows:

I have carefully considered the evidence presented, the arguments put forth by the parties and the applicable Agreement language. . . . I certainly don't want to minimize the intent of the overall tobacco free policy, and its attempt to improve the health of all concerned. These objectives of the policy are appropriate, and show that the Employer is trying to meet its overall mission. While the approach of the Employer is commendable, the specific issue in this case centers on the reasonableness of the policy. In this case, the evidence shows there has been a no smoking policy in effect since 1992, but all during this time there has been an opportunity for employees to smoke in certain designated areas outside the hospital buildings. *In my considered opinion, what has occurred in this circumstance was the establishment of a past practice regarding employees having a designated location to smoke. The employees had come to expect they would have a specific location to smoke, and in my considered opinion, this expectation rose to the level of a protected local working condition.* The Employer was well aware of this practice, as it had been in place for many years, but it never took steps to alter this working condition. It is quite clear from the evidence which has been established that the Employer never attempted to negotiate a change to the existing practice in its recent negotiations with the Union, but chose to continue with the existing arrangements that existed for employees to smoke in designated areas. It was only subsequent to the conclusion of its negotiations that the Employer decided to alter the existing smoking arrangements, and *in doing so changed the established local working conditions.*

The Employer has contended its policy is reasonable, and it can be unilaterally implemented, as other policies have been implemented in the past. I understand the contentions of the Employer in this regard, and recognize that certain policies can in fact be unilaterally implemented. Also, I am not saying that the policy of the Employer has no basis and is to be disregarded. *It is my opinion the unilateral implementation of a policy can occur, but where such policy alters the existing rights of the employees, that such rights need to be considered in the development of the policy.* It should be understood that the Employer's tobacco free policy is not completely unacceptable, as many of the provisions of such policy are well

4

meaning and provide a positive message. The problem with the policy is that it fails to make a reasonable accommodation for employees who previously had a designated location to smoke. It is also readily apparent that the Employer has previously had problems policing the designated smoking areas, but this should not deter the Employer from established [sic] a controlled designed [sic] smoking area for its employees, *so as to properly provide for the established working condition enjoyed by the employees pursuant to the prior smoking policy*. Making such alteration to the existing policy would satisfy the past practices which previously existed, while providing for a reasonable tobacco free policy.

JA 107-108 (emphases added). The arbitrator then proceeded to issue an award which directed the Hospital to meet with Union officials "for the purpose of providing for a reasonable accommodation for employees to smoke in a designated area." JA 108.

Upon receipt of the award, the Hospital commenced this lawsuit, asking the District Court to vacate the award under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). After the parties filed cross-motions for summary judgment, the District Court granted summary judgment to the Hospital. The District Court's opinion noted the deferential standard of review for labor arbitration awards set forth in this Court's precedents. *See* JA 6-7 (citing *Brentwood Med. Assocs. v. United Mine Workers*, 396 F.3d 237 (3d Cir. 2005); *Citgo Asphalt Refining Co. v. Paper Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004)). However, the court found that the award must nonetheless be vacated because it did not "'draw its essence' from the language of the CBA." JA 8.[1]

---

[1] The court also stated that it was "not fully persuaded" by the public policy and jurisdictional arguments raised by the Hospital, but found that it did not need to "reach a final determination on those grounds" in light of its holding that the award did not "draw its essence" from the language of the CBA. JA 8.

5

The District Court found that the "fundamental error" made by the arbitrator was his determination that "'employees had come to expect they would have a specific location to smoke, and in my considered opinion, this expectation rose to the level of a protected local working condition.'" JA 8 (quoting arbitrator's opinion). As the court noted, Section 4.05 of the CBA provides that "[t]he management rights set forth in this Article are by way of example and not by way of limitation and *specifically are not limited by existing or 'prior practices'* or 'side agreements' which existed prior to this Agreement and are not incorporated herein." JA 55 (emphasis added). Noting that the arbitrator did not attempt to parse or apply Section 4.05, the court found that

> the arbitrator based his "considered opinion" on a ground that is specifically barred by the CBA. This is the essence of "manifest disregard" of the contractual language. Pursuant to Section 4.05, employee expectations regarding prior practices cannot become "protected local working conditions."

JA 10 (citations omitted). The court therefore granted summary judgment to the Hospital and issued an order vacating the arbitration award. This appeal followed.

II.

This court has jurisdiction over this appeal under 28 U.S.C. § 1291. We exercise plenary review over the district court's decision resolving the parties' cross-motions for summary judgment. *Brentwood Med. Assocs.*, 396 F.3d at 240.

The Supreme Court has long emphasized that judicial review of a labor arbitration decision construing a collective bargaining agreement between an employer and a labor organization is "very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2000) (per curiam); *see also United Paperworkers Int'l Union v. Misco,*

*Inc.*, 484 U.S. 29, 36 (1987) ("[C]ourts play only a limited role when asked to review the decision of an arbitrator."). This is because the parties "have 'bargained for' the 'arbitrator's construction' of their agreement." *Eastern Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)). Accordingly, courts may set aside an arbitrator's award only in the "rare instance[]" when the award does not "'draw its essence from the contract and . . . simply reflect[s] the arbitrator's own notions of industrial justice.'" *Id.* at 62 (quoting *Misco*, 484 U.S. at 38). As long as an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, [the fact] that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.

Our Court has similarly emphasized that the scope of judicial review of a labor arbitrator's decision is "exceedingly narrow." *Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen, Local 112*, 687 F.2d 673, 675 (3d Cir. 1982). We must defer to an arbitrator's decision if it "can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Brentwood Med. Assocs.*, 396 F.3d at 241 (emphasis in original); *see also Citgo Asphalt*, 385 F.3d at 816 ("'[O]nly where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop, may a reviewing court disturb the award.'" (quoting *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996))).

7

III.

The CBA reserves to the Hospital "the right to establish, revise and administer *reasonable* policies and procedures" and to "to make or change *reasonable* Employer rules, regulations, policies and practices, provided the Employer gives advance notice to the Union." JA 55 (emphasis added). The arbitrator determined that the TFC Policy was unreasonable because "what has occurred in this circumstance was the establishment of a past practice regarding employees having a designated location to smoke," which created an expectation that "rose to the level of a protected local working condition." JA 107. As the Hospital notes, the CBA never uses the term "protected local working condition," and Section 4.05 of the CBA explicitly provides that "[t]he management rights set forth in this Article are by way of example and not by way of limitation and specifically are not limited by [1] existing or 'prior practices' or [2] 'side agreements' which existed prior to this Agreement and are not incorporated herein." JA 55.

The Union attempts to defend the arbitrator's construction of the CBA by suggesting that "[a]t most, Section 4.05 arguably barred consideration of practices and side agreements as they existed *prior* to the time the CBA entered into force. It did not bar consideration of such practices existing *during* the course of the agreement." Appellant's Br. at 24 (emphasis added). We note, first, that the arbitrator gave no indication that he understood Section 4.05 in this way. *See, e.g.*, JA 107 ("The Employer was well aware of this practice, as it had been in place *for many years*, but it never took

8

steps to alter this working condition.").[2]  Second, we find the Union's speculative reading of Section 4.05—that it affects only practices that "existed prior to the time the CBA entered into force"—to be untenable because it renders the word "existing" superfluous. *See* JA 55 (providing, in Section 4.05, that management rights "are not limited by existing *or* 'prior practices'" (emphasis added)).  If the parties had intended to limit Section 4.05 to only "prior" practices, they could simply have omitted the word "existing" entirely.  *See New Castle Cnty. v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338, 349 (3d Cir. 1999) ("[T]his Court takes care not to render other portions of a provision or contract superfluous when construing contract language.").

In addition, contrary to the suggestion of the Union, the arbitrator did not merely "consider" past practices in his assessment of whether the TFC Policy was reasonable. Rather, the arbitrator held that an existing practice affecting employees creates "expectation[s]," which in turn create "a protected local working condition," and that under the CBA the Hospital was bound to respect such "protected local working conditions."  *See* JA 107-08 ("It is my opinion the unilateral implementation of a policy can occur, but where such policy alters the existing rights of the employees, that such rights need to be considered in the development of the policy . . . .  The problem with the policy is that it fails to make a reasonable accommodation for employees who previously

---

[2] We note further that the Union's arguments in the arbitration proceeding, as understood by the arbitrator, do not appear consistent with the argument it now raises on appeal.  *See* JA 96 (According to the arbitrator, "[i]t is the position of the Union that the policy of the hospital infringes on the viable *long standing* past practice that has been employed by the tobacco users who have been employed at the hospital for *many years*." (emphases added)).

9

had a designated location to smoke."). As noted above, however, the CBA never uses the phrase "protected local working condition," and nothing in Article 4 can remotely be construed to grant employees enforceable rights solely on the basis of an "expectation" arising from a past or existing practice. On the contrary, Section 4.05 expressly states that management rights are not limited by "existing or 'prior practices'" and other sections of Article 4 state that the "functions and responsibilities of Management are retained and vested *exclusively* in the Employer" and that the "Employer reserves the right to establish, revise and administer reasonable policies and procedures." JA 55 (emphasis added).

Thus, the arbitrator's opinion effectively rewrote the parties' agreement to state that (1) a past or existing practice affecting employees creates a "protected local working condition" and (2) any policy unilaterally adopted by the Hospital which eliminates a "protected local working condition" could not be considered "reasonable" under Article 4. Although we are aware that the scope of our review of a labor arbitration award is "very narrow," *Garvey*, 532 U.S. at 509, we find that this interpretation—directly contrary to the plain meaning of Section 4.05 and premised entirely on a term that is never used in the agreement—is so untethered from and contrary to the language of Article 4 that we cannot say that the arbitrator was even "arguably construing" the agreement. *Misco*, 484 U.S. at 38; *see also id.* (noting that "[t]he arbitrator may not ignore the plain language of the contract"). Nor can we say that this construction of the

10

CBA can "in any rational way be derived from the agreement." *Brentwood Med. Assocs.*, 396 F.3d at 241.[3]

We also find that this case is unlike *Brentwood Medical Associates*, in which we upheld an arbitration award despite the arbitrator's interpolation of words into the contract because "the remainder of the justification for the award offered by the arbitrator was capable of separation from the aberrant language." 396 F.3d at 243. As the District Court found, the arbitrator in this case "to his professional credit, clearly explained the rationale for his decision." JA 8. The arbitrator explained that "[t]he employees had come to expect they would have a specific location to smoke, and in my considered opinion, this expectation rose to the level of a protected local working condition." JA 107. Because the arbitrator's decision was fundamentally premised on the notion of a "protected local working condition," we believe that his decision is not "capable of separation from the aberrant language." 396 F.3d at 243.

We find the various other arguments raised in the Union's brief unpersuasive. In particular, we reject the Union's argument that the Hospital waived reliance on Section 4.05. First, the Union failed to raise this argument in the District Court and therefore waived it for purposes of appeal. *See* JA 9 n.1 (District Court opinion) (noting that the Union failed to "discuss, distinguish, or even to recognize the existence of Section 4.05"

---

[3] In addition, even if it might have been more generous for the Hospital to have bargained with the Union over the TFC Policy rather than implement it unilaterally, "an arbitrator's opinion and award based on 'general considerations of fairness and equity' as opposed to the exact terms of the CBA, fails to derive its essence from the CBA." *Citgo Asphalt*, 385 F.3d at 817 (quoting *MidMichigan Reg'l Med. Ctr-Clare v. Professional Employees Div.*, 183 F.3d 297, 502 (6th Cir. 1999)).

11

in its brief to the district court). Second, Article 4, which is set forth in its entirety on two pages of the CBA, *see* JA 55, was readily available to the arbitrator for construction as a whole, and the Hospital had no reason to expect that the arbitrator would adopt a reading of Article 4 that added a new substantive right—that employee "expectations" can give rise to a "protected local working condition"—directly at odds with Section 4.05. Thus, this is not a case in which the employer attempted to "keep silent at arbitration, hoping perhaps to 'sandbag'" the union later. *United Steelworkers v. Danly Mach. Co.*, 852 F.2d 1024, 1028 (7th Cir. 1988).[4]

For these reasons, we will affirm the judgment of the district court vacating the arbitral award.

---

[4] We will grant the Hospital's Motion to Strike the Hospital's post-hearing brief from the Union's Addendum, because this document was not part of the record before the District Court. *See* Fed. R. App. P. 10(a); *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009) ("[A]n appellate court may only review the record as it existed at the time summary judgment was entered." (citation omitted)).