NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4554
_____

RITE AID OF NEW JERSEY, INC.,
                                        Appellant,

v.

UNITED FOOD AND COMMERCIAL WORKERS UNION,  LOCAL 1360

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 11-cv-00374)
District Judge:  Hon. Renee M. Bumb
_____

Submitted Under Third Circuit LAR 34.1(a)
September 28, 2012

Before:   McKEE, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: October 16, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Rite Aid of New Jersey, Inc. ("Rite Aid") appeals an order of the United States

District Court for the District of New Jersey affirming an arbitration award in favor of

United Food and Commercial Workers Union, Local 1360 (the "Union").  Rite Aid

claims that the District Court erred in upholding the arbitrator's decision to enforce the

terms of an oral agreement that Rite Aid and the Union reached in November 1999. For the following reasons, we will affirm.

## I.    Background

### A.    *Facts*

Rite Aid and the Union are the parties to three collective bargaining agreements ("CBAs") which govern the wages, hours, and working conditions of employees at certain Rite Aid stores in New Jersey. The first CBA was executed on November 9, 1999 (the "1999 CBA") and contained what the parties refer to as a "Recognition Clause" that governs the conditions under which Rite Aid would recognize the Union as the exclusive bargaining representative of employees at stores located within the Union's jurisdiction. The Recognition Clause provides, in relevant part, that:

> [Rite Aid] recognizes the Union as the exclusive representative of all employees except only store managers, assistant managers, pharmacists, pharmacy interns in … all stores added to the union via [National Labor Relations Board] elections or other demonstration of the Union status acceptable to [Rite Aid] under the jurisdiction of United Food & Commercial Workers Union, Local 1360, now or hereafter owned and/or operated by the Employer, doing business as Rite Aid Corporation or otherwise and whether by the same or other person, partnerships, associations or corporations, and whether by concessionaires, licensees, or lessees[.]

(App. at 111.) CBAs executed in 2002 and 2005 (the "2002 CBA" and the "2005 CBA," respectively) contain essentially the same Recognition Clause. (*See* App. at 126, 143 (describing persons subject to Union representation as "associates" rather than "employees" but otherwise containing the same recognition language as the 1999 CBA).)

2

Before executing the 1999 CBA, the parties entered into an oral agreement (the "Card Check Agreement" or the "Agreement") that addressed the circumstances under which Rite Aid would recognize the Union as the collective bargaining representative for non-union stores in the absence of an election approved by the National Labor Relations Board ("NLRB"). The record does not contain a written document memorializing the Card Check Agreement. However, the parties stipulate that the Agreement provided that Rite Aid would "voluntarily recognize the Union as the collective bargaining representative for the employees in any store within the Union's jurisdiction for which the Union proved by presentation of signed union authorization cards that a majority of the employees in the store wished to be represented by the Union" (App. at 103), a procedure commonly referred to as a "card check." The parties also stipulate that, as part of the Card Check Agreement, Rite Aid agreed to "recognize the Union as the bargaining representative" of any non-union store based on a card check alone, without "a formal election under the rules and regulations of the [NLRB]." (*Id.*)

Rite Aid sent a memorandum to all of its non-union employees on November 1, 1999, prior to the execution of the 1999 CBA, apprising them of the Card Check Agreement's key provisions. Referring to employees as "associates," the memorandum stated:

> Rite Aid has a special arrangement with [the Union] who represents some of our associates in New Jersey. Rite Aid has agreed to recognize "card checks" to see if associates in a store want to join the union. If the union has union cards signed by a majority of the hourly associates in a store, Rite Aid will recognize the union as the representative of all the associates in that store. We will not require that the union go

3

through a "secret ballot election" like most unions have to in order to be recognized. As part of this arrangement, we have also agreed that Rite Aid will take a "neutral" approach to the union's organizing efforts. What this means is that, although we are not encouraging anyone to join, we also will not discourage anyone from signing a card.

(App. at 206.) The memorandum also advised non-union employees that they had the right to sign or not sign a union authorization card but that the card check would be their "only opportunity to 'vote' on union recognition." (*Id.*) The Union used the card check process to organize approximately sixty-three Rite Aid stores between November 1999 and December 2002.

Rite Aid received certain benefits in exchange for entering into the Card Check Agreement. Before Rite Aid agreed to accept the card check process, Union members covered by the Tri-State Health and Welfare Fund (the "Fund"), which provides benefits to Union members, were unlikely to fill their prescriptions at Rite Aid pharmacies because Rite Aid was not approved as a participating pharmacy services provider. However, in exchange for its promise to accept the card check process, Rite Aid became a participating provider in the Fund, and the Fund removed Rite Aid competitors CVS and Eckerd Drugs as providers for Union members.[1] In 2001, the Fund also agreed to include Rite Aid as a participating provider for union employees in parts of Pennsylvania,

---

[1] Rite Aid admits that there was a *quid pro quo* arrangement. (*See* Appellant's Opening Br. at 5 ("In exchange for its decision to [accept card checks], Rite Aid became a participating provider…." (citation and internal quotation marks omitted)).) In fact, the letter from the Fund's contract administrator that describes Rite Aid's new provider status and the exclusion of CVS and Eckerd was dated November 1, 1999 – the same day that Rite Aid notified non-union employees of the Card Check Agreement.

4

Delaware, and Maryland, and to exclude a number of Rite Aid competitors, including CVS, Eckerd Drugs, Walgreen's, Walmart, and K-Mart, as providers in those areas.

In 2003, Rite Aid replaced its Director of Labor Relations. Between 2003 and 2005, Rite Aid refused to recognize Union representation at five New Jersey stores based on card checks and also failed to respond to repeated Union requests for an explanation of Rite Aid's failure to accept the card checks at these locations.

B. *Procedural History*

On November 8, 2007, the Union submitted to arbitration its grievance relating to Rite Aid's violation of the Card Check Agreement. The arbitrator conducted a hearing at which the parties presented oral testimony and documentary evidence. The arbitrator concluded that Rite Aid had violated the terms of the Recognition Clause and sustained the Union's grievance.

In reaching that conclusion, the arbitrator first observed that the Recognition Clause contained in the several CBAs provides that non-union Rite Aid stores may be "'added to the Union via NLRB elections or other demonstration of the Union's status acceptable to [Rite Aid] under the jurisdiction of the [Union].'" (*Id.* at 91 (quoting App. at 111, 126, 143).) The arbitrator determined that if such language "stood alone," then "there would be merit in [Rite Aid's] position that it retained the option to insist upon an NLRB election even when the Union presented authorization cards" signed by a majority of the employees at a given store. (*Id.*)

However, the arbitrator determined that the parties had "amended and modified" the Recognition Clause as a result of the Card Check Agreement and that they had agreed

5

that Rite Aid "would not … insist upon an NLRB election when the Union presented a majority of authorization cards from the employees at a Rite Aid store." (*Id.* at 93.) The arbitrator found it significant that "Rite Aid received a substantial monetary benefit when it was included in [the Fund]" in exchange for entering into the Agreement. (*Id.*)

On January 20, 2011, Rite Aid filed a petition in the District Court seeking an order vacating the arbitration award and entering judgment in its favor. On November 28, 2011, the District Court denied Rite Aid's petition. Rite Aid then filed this timely appeal.

## II.    Discussion[2]

### A.    *Legal Standard*

Our review of an arbitration award associated with a collective bargaining agreement is limited to determining whether it "draws its essence" from that agreement. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 240 (3d Cir. 2005) (citation and internal quotation marks omitted).[3] "An arbitrator's award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Id.* at 241 (emphasis in original). "[W]e must enforce an arbitration award if it was based on an arguable interpretation and/or

---

[2] The District Court had jurisdiction pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. We have jurisdiction under 28 U.S.C. § 1291.

[3] Our review of an appeal of an arbitration award is plenary, and we apply the same test applied by the District Court. *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004) (citation omitted).

application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction." *Id.* It is not our role "to correct factual or legal errors made by [the] arbitrator." *Id.* at 240. Thus, we will not vacate an arbitration award "even if we find the basis for it to be ambiguous or disagree[] with [the arbitrator's] conclusions under the law." *Id.* at 241 (citation and internal quotation marks omitted).

We presume that any arbitration award is valid unless the party seeking to vacate the award "affirmatively show[s]" that it is invalid on one of the grounds listed in the Federal Arbitration Act, 9 U.S.C. §§ 1-14. *Brentwood Med. Assocs.*, 396 F.3d at 241.

B.      *The Arbitrator's Decision*

Rite Aid's appeal invokes 9 U.S.C. § 10(a)(4), which provides that a district court may vacate an arbitration award "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Brentwood Med. Assocs.*, 396 F.3d at 241 n.5 (quoting 9 U.S.C. § 10(a)(4)). Specifically, Rite Aid argues that we should reverse the District Court's order denying its petition because the arbitrator exceeded his authority when he concluded that Rite Aid was obligated to recognize the Union at individual stores based on card checks. According to Rite Aid, under the 2005 CBA, it has "the unfettered discretion to recognize the Union as the collective bargaining representative in its stores based on either NLRB elections or any other demonstration of 'Union status' *acceptable* to Rite Aid." (Appellant's Opening Br. at 23 (emphasis in original).)

7

The Union responds that Rite Aid expressly agreed to accept a card check as proof that a majority of employees at a non-union Rite Aid store wish to allow the Union to serve as their representative during labor negotiations. The Union claims that the Card Check Agreement effectively modified the Recognition Clause for purposes of the 1999 CBA, and that it continued to govern the parties' relationship under the 2002 and 2005 CBAs, which include the essentially identical recognition provision.

Despite Rite Aid's arguments to the contrary,[4] there is sufficient evidence in the record from which the arbitrator's interpretation could "*in any rational way* be derived from" the CBAs. *Brentwood Med. Assocs.*, 396 F.3d at 241 (emphasis in original). At

---

[4] Rite Aid relies heavily on two opinions that are without precedential value. First, Rite Aid attempts to draw on our "powerful ruling" (Appellant's Opening Br. at 28) in *Armstrong County Memorial Hospital v. USW Local 158-06*, 419 F. App'x 217 (3d Cir. 2011) in which a panel of our court affirmed a judgment of the District Court vacating an arbitral award that was based on a contract interpretation directly contrary to the plain meaning of a contract provision. Assuming *arguendo* that *Armstrong County Memorial Hospital* has persuasive value, the present case is distinguishable in that a card check is in no way inconsistent with the Recognition Clause.

Second, Rite Aid cites *CP Kelco US, Inc. v. International Union of Operating Engineers*, 381 F. App'x 808 (10th Cir. 2010) in which a panel of the Tenth Circuit concluded that an arbitrator improperly amended a CBA because the arbitrator considered and enforced a labor management policy without first finding that the applicable provisions of the CBA were ambiguous. Rite Aid argues that the Recognition Clause unambiguously preserves Rite Aid's "unfettered recognition discretion" and that the arbitrator improperly amended the 2005 CBA by finding that the Card Check Agreement either modified or superseded the Recognition Clause that it contained. (Appellant's Opening Br. at 33.) Regardless of whether we agree with the arbitrator in this regard, as the District Court properly noted, the arbitrator's determination amounts to a legal interpretation of the CBA. Such an interpretation falls within the arbitrator's powers and, based as it was on substantial testimony and documentary evidence, it was not so "imperfectly executed" an exercise of those powers as to entitle Rite Aid to relief from the award under 9 U.S.C. § 10(a)(4).

8

least three pieces of evidence support the arbitrator's conclusion that Rite Aid agreed to accept the card check process in return for provider status under the Fund.

First, Rite Aid accepted card checks for the unionization of approximately sixty-three Rite Aid stores from November 1999 to December 2002. By recognizing the Union based on card checks for a three-year period, Rite Aid demonstrated through its course of dealing that the card check process was an "acceptable" method under the Recognition Clause of demonstrating a non-union store's intent to unionize.

Second, Rite Aid continued to enjoy the economic benefit of its agreement to accept card checks when it signed the 2002 and 2005 CBAs because it continued to be a participating pharmacy services provider for the Fund. The fact that, throughout the pendency of the 2002 and 2005 CBAs, Rite Aid continued to receive the economic benefits resulting from its decision to accept card checks as an acceptable means of unionization suggests that the Card Check Agreement could rationally be viewed as an enforceable part of the parties' contract at all periods of time relevant to this dispute.

Third, the record can be read to reject the premise that when Rite Aid executed the Card Check Agreement and distributed the 1999 memorandum to its non-union employees it only intended for the agreement to govern the parties' collective bargaining arrangements until the expiration of the 1999 CBA. Neither the Card Check Agreement, as described by the parties' stipulations of fact, nor the internal memorandum Rite Aid

sent to its non-union associates, suggests that the Card Check Agreement governed the

parties' relationship only during the pendency of the 1999 CBA.[5]

Thus, we are satisfied that the arbitrator's award "draws its essence" from the

CBAs, viewed in the context of both the Card Check Agreement and the parties' course

of dealing, and we are without jurisdiction to consider the award further. *Brentwood*

*Med. Assocs.*, 396 F.3d at 241.

## III. Conclusion

Accordingly, we will affirm the District Court's judgment.

---

[5] Rite Aid argues that the District Court "mandate[ed] perpetual and indefinite card check recognition" of the Union at Rite Aid stores when it refused to vacate the arbitration award. (Appellant's Opening Br. at 2.) That is not an accurate statement of the arbitrator's conclusion. The arbitrator simply noted that, because Rite Aid agreed that it would accept card check recognition in place of an NLRB election, Rite Aid must "make a proposal terminating" this "waiver" of the election requirement as part of the collective bargaining process. (App. at 94.) That conclusion was in no way irrational, given Rite Aid's admission that it agreed to accept card checks in exchange for the ability to provide pharmacy services to Union members.