NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2605
_____

MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,

*Appellant*

v.

CHERYL SCHWARZWAELDER
_____

On Appeal from the District Court
for the Western District of Pennsylvania
(Nos. 11-cv-107, 11-cv-162)
District Judge: Honorable Arthur J. Schwab
_____

Argued on February 9, 2012

Before: SLOVITER and VANASKIE, *Circuit Judges*,
and POLLAK, *District Judge*[*]

(Opinion Initially Filed:  August 13, 2012)
(Opinion Reinstated: December 26, 2012)


Michael J. Fortunato, Esq. [Argued]
Patricia Tsipras, Esq.
Rubin, Fortunato & Harbison P.C.
10 South Leopard Road

_____

[*] Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.  Judge Pollak participated in the argument in this case and in the conference following the argument.  However, his death occurred prior to the filing of this opinion.  The case is decided by a quorum of the court pursuant to 28 U.S.C. § 46(d) and Third Circuit IOP 12.1(b).

Paoli, Pennsylvania 19301

Lauren D. Rushak, Esq.
Thorp, Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219

       *Counsel for Appellant*

Joseph H. Chivers, III, Esq. [Argued]
100 First Avenue
First & Market Building
Suite 1010
Pittsburgh, PA 15222

       *Counsel for Appellee*

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

The question presented in this appeal is whether an arbitration award is so untethered from the facts and underlying agreements as to be "irrational." The arbitration award requires Cheryl Schwarzwaelder to repay a loan given to her by her former employer, Merrill Lynch, Pierce, Fenner & Smith Inc., when she first joined the company. Schwarzwaelder argues that she is entitled to other compensation from Merrill Lynch in an amount that would offset her loan repayment obligation. The arbitrators decided that Schwarzwaelder had released her claim to this other compensation in a settlement agreement in related litigation between the same parties. We find that the arbitrators' decision is not irrational. Therefore, we hold that the arbitration award must

2

be confirmed. Accordingly, the District Court decision vacating the arbitration award in favor of Merrill Lynch will be reversed.

## I. Facts and Procedural History

### A. Schwarzwaelder's Compensation Package

Schwarzwaelder joined Merrill Lynch as a financial advisor in the company's Pittsburgh offices in 2002. One aspect of her initial compensation arrangement is central to this appeal. Under her written employment agreement, Merrill Lynch agreed to pay Schwarzwaelder "monthly transition compensation payments" of $16,687.15 from March 2003 to November 2007. (A. 295-96.) In a separate promissory note, Merrill Lynch loaned Schwarzwaelder $850,000, which she agreed to repay with interest in monthly installments of $16,687.15 from March 2003 to November 2007. Thus, Schwarzwaelder's obligation to repay the loan would be matched each month by a payment of transition compensation. The compensation arrangement also included a provision for acceleration of the transition compensation payments in the event that Schwarzwaelder became disabled. Specifically, the parties' agreement provided that, in the event she became disabled, Schwarzwaelder was to receive "a lump sum payment equal to the remaining transition compensation payments through November 2007." (A. 296.)

### B. Schwarzwaelder's Disability Claim

In November 2003, Schwarzwaelder ceased work and applied for benefits under Merrill Lynch's long-term disability benefit plan. Her claim was denied, and she brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

3

§§ 1001 *et seq.* Ultimately, after a remand to the claims administrator, the District Court determined that Schwarzwaelder was disabled within the meaning of the plan. *Schwarzwaelder v. Merrill Lynch & Co.*, 606 F. Supp. 2d 546, 558-70 (W.D. Pa. 2009).

Merrill Lynch appealed to this court. While the appeal was pending, the parties settled the ERISA litigation. The settlement was memorialized in an agreement and release executed on November 25, 2009. Of central importance to this case is the fact that, with the exception of certain specifically identified claims brought by Schwarzwaelder and Merrill Lynch against each other in an arbitration proceeding before the Financial Industry Regulatory Authority (FINRA), the parties released each other from all claims or liabilities "arising out of, or relating to, [Schwarzwaelder]'s employment or termination of employment." (A. 389.) Specifically, the release executed as part of the ERISA settlement provided:

> Nothing in . . . this Agreement shall prohibit or restrict the parties from prosecuting or defending the following claims before the Financial Industry Regulatory Authority ("FINRA"): Schwarzwaelder's claim for two asset bonuses pursuant to the terms of her hiring Agreement; Schwarzwaelder's claim for payment under Merrill Lynch's Financial Advisor Capital Accumulation Award Plan pursuant to the terms of her hiring Agreement; Schwarzwaelder's claim for payment under Merrill Lynch's Short Term Deferred Contingent Award Plan pursuant to the terms of her hiring Agreement; Schwarzwaelder's claim for a referral fee in connection with Merrill Lynch's hire of Mr. Smith, an investment banker; Schwarzwaelder's potential claims (claims not yet filed in the pending FINRA proceeding) under common law theories of civil conspiracy, fraud, and tortious interference relating to the circumstances of the denial of her benefits and to her separation from Merrill Lynch; and Merrill Lynch's claim for payment pursuant to the terms of Schwarzwaelder's Promissory Note ("FINRA claims").

(A. 389-90.)

4

The final item from that list is pertinent here: the ERISA settlement permitted Merrill Lynch to arbitrate a claim for repayment of the $850,000 promissory note. Notably, the release is silent on the matter of the monthly transition compensation payments of $16,687.15. Nor did the release mention any claim to entitlement to a lump sum payment equal to the remaining transition compensation payments based upon Schwarzwaelder's alleged disability.

## C.    The FINRA Arbitration

The FINRA arbitration had begun in April 2004. Prior to the ERISA settlement, Merrill Lynch asserted in the arbitration that it was owed nearly $700,000 in unpaid principal on the promissory note. Schwarzwaelder believed that Merrill Lynch's arbitration claim for payment on the promissory note depended upon the outcome of the ERISA litigation. As noted above, under her employment agreement, if Schwarzwaelder became disabled—a determination she sought in the ERISA litigation—then her transition compensation payments would be accelerated: in lieu of monthly payments, Schwarzwaelder was entitled to receive "a lump sum payment equal to the remaining transition compensation payments through November 2007." (A. 296.) In May 2005, the parties jointly stipulated to a stay of the arbitration pending the resolution of the ERISA litigation.

After the ERISA litigation was resolved by settlement in November 2009, Schwarzwaelder re-opened the arbitration. Her amended arbitration complaint did not request a lump sum payment of the transition compensation. Merrill Lynch submitted a counterclaim for payment of the unpaid balance on the promissory note. Schwarzwaelder

5

maintained that her obligation to repay the note was offset, dollar-for-dollar, by her entitlement to a lump sum payment of transition compensation upon being found to be disabled in the ERISA litigation. Although she had not affirmatively sought payment of this lump sum amount, she argued that she could rely on it as a form of defense to Merrill Lynch's claim.

A panel of arbitrators held a hearing in the matter in December 2010 and issued a written decision on January 6, 2011. The arbitrators accepted the finding of the District Court in the ERISA litigation that Schwarzwaelder had become disabled, but they nevertheless held that any entitlement Schwarzwaelder may have had to a lump sum payment of transition compensation was released in the ERISA settlement. The arbitration award explained:

> Not only did [Schwarzwaelder] fail to make a claim for monthly transition compensation payments in her action before FINRA, although she made other compensation claims, the Panel finds that any such claim was waived by the terms of the Settlement and Release dated 11/25/09, since the monthly transition compensation payments were not an excepted claim.

(A. 261.)

After adjusting for awards on claims presented by Schwarzwaelder, the arbitrators entered an award in favor of Merrill Lynch in the amount of $544,244.

**D.**     **District Court Review of the Arbitration Award**

Merrill Lynch commenced an action in the District Court for confirmation of the arbitration award as permitted by the Federal Arbitration Act, 9 U.S.C. § 9. Schwarzwaelder applied to the same Court for an order vacating the arbitration award,

6

arguing that the arbitrators "exceeded their powers" within the meaning of 9 U.S.C. § 10(a)(4) by issuing an irrational decision. The two proceedings were consolidated.

The District Court denied Merrill Lynch's application, granted Schwarzwaelder's application, and vacated the arbitration award. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Schwarzwaelder*, Civ. No. 2:11-107, 2011 WL 1882450, at *5 (W.D. Pa. May 17, 2011). The District Court held that the arbitrators had "exceeded their powers" by irrationally construing the parties' arrangements. The District Court reasoned that the promissory note and the employment agreement "[w]hen read together . . . created a forgivable loan" and "[t]he assertion that a loan has been forgiven is routinely viewed as a defense . . . , not a claim that must be plead[ed] separately." *Id.* at *3-4; *see also id.* at *5 (remanding to the arbitrators to calculate lump sum payment of transition compensation). Merrill Lynch appealed the District Court's order to this court.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction to hear the parties' applications to confirm or vacate the arbitration award because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (explaining that Federal Arbitration Act "does not create any independent federal-question jurisdiction"). As to our jurisdiction, the Federal Arbitration Act permits us to hear an appeal from an order "confirming or denying confirmation of an award" or "vacating an award." 9 U.S.C. § 16(a)(1)(D), (E). The fact that the District Court also ordered that the matter be remanded to the arbitrators does not impair our jurisdiction, because we may entertain an

appeal even when the district court's order contemplates further arbitration proceedings. *See V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 913-14 (3d Cir. 1994) (holding that order vacating arbitration award and remanding for "re-evaluation of the entire controversy" was an appealable final order); *see also Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328 (1st Cir. 2000) ("[A]n order of the district court which vacates and remands an arbitral award is not thus made an interlocutory order.").

The District Court's order vacating the arbitration award is subject to ordinary principles of appellate review. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995). Factual findings are reviewed for clear error, and legal conclusions are reviewed *de novo*. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 287 (3d Cir. 2010). In the present case, the District Court made no findings of fact, and our review is plenary. We apply the same legal standard under the Federal Arbitration Act that the District Court applied. *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 579 (3d Cir. 2005).

### III. Discussion

The sole ground advanced by Schwarzwaelder for vacating the arbitration award is that "the arbitrators exceeded their powers" by concluding that the release executed as part of the ERISA settlement barred her from claiming an offset to her liability on the promissory note in the amount of unpaid transition compensation payments.[1] Arbitrators exceed their powers when they fashion an award that cannot "be rationally derived from

---

[1] Section 10(a)(4) of the Federal Arbitration Act authorizes a court to set aside an arbitration "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).

8

the agreement between the parties or from the parties' submissions to the arbitrators" or when the terms of the arbitration award itself "are completely irrational." *Ario*, 618 F.3d at 295 (internal quotation marks and alteration omitted). An arbitration award is not rationally derived from the agreement of the parties only when there is "absolutely no support at all in the record justifying the arbitrators' determinations." *Id.*; *see also Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (asking "whether the arbitrator's conclusion is supported, in any way, by a rational interpretation of the collective bargaining agreement").

This is a "singularly undemanding" standard. *Ario,* 618 F.3d at 296 (internal quotation marks and citation omitted). Although we will not "'rubber stamp' the interpretations and decisions of arbitrators," *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir. 1996), we nevertheless afford arbitration awards "a strong presumption of correctness." *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004). The parties to an arbitration agreement have bargained for their dispute to be resolved by the arbitrators rather than by the courts. *Id.* The role of the courts is to ask only "whether the parties . . . got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second would produce a rational award." *Brentwood Med. Assocs.*, 396 F.3d at 242.

In this case, the arbitrators construed the ERISA settlement to mean that Schwarzwaelder released any claim she may otherwise have had to a lump sum payment of transition compensation under her employment agreement. A straightforward reading

9

of the ERISA settlement provides at least some support for that conclusion. The ERISA settlement identifies six specific claims or sets of claims that the parties agreed to allow to go forward in arbitration. Schwarzwaelder's claim for transition compensation is not among them.

To avoid this result, Schwarzwaelder relies on one principal counterargument: the ERISA settlement preserves Schwarzwaelder's right to raise *defenses* to Merrill Lynch's claim for the unpaid balance of the promissory note. Schwarzwaelder contends that the transition compensation payments were intended as a form of loan forgiveness; that loan forgiveness is a defense; and that she is therefore entitled to rely on the transition compensation as a defense to Merrill Lynch's claim. She argues that the arbitrators' rejection of this theory rested on an irrational separation of the promissory note and the employment agreement.

According to Schwarzwaelder, a forgivable loan is a common compensation device within the securities industry. *See, e.g.*, *PaineWebber, Inc. v. Agron*, 49 F.3d 347, 349 (8th Cir. 1995) (loan of $100,933 forgiven over three years in equal annual installments); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1163 (N.D. Cal. 2011) (loan of $520,488 forgiven over six years). Often the terms of the loan explicitly contemplate forgiveness. But Schwarzwaelder also offers instances of compensation arrangements more akin to the facts of this case, where the promissory note is paired with equal and offsetting compensation. *See Jenkins v. Prudential-Bache Secs., Inc.*, 847 F.2d 631, 632 (10th Cir. 1988) (promissory note for $60,000 loan and employment agreement provision for bonus of $60,000 to be paid in future yearly installments, with employer

10

reserving right to apply bonus to loan repayment); *Banus v. Citigroup Global Mkts., Inc.*, Civ. No. 98-7128, 2010 WL 1643780, at *2 (S.D.N.Y. Apr. 23, 2010) (promissory note requiring repayment in seven equal annual installments, paired with "special compensation" payments in same amount over same time); *In re Killian*, 422 B.R. 903, 907 (Bankr. S.D. Ill. 2009) (similar).

The parties' two agreements in the present case appear to have been drafted to fit together. The monthly transition compensation payments in the employment agreement and the schedule of loan repayments in the promissory note are identical in amount and duration—offsetting payments of $16,687.15 every month from March 2003 to November 2007. While the two agreements do not explicitly refer to each other, the promissory note states that the sum of $16,687.15 will be deducted each month from Schwarzwaelder's total "compensation," which is defined in the promissory note to include "transition compensation." (A. 305.) Similarly, the employment agreement states that if Schwarzwaelder is disabled, the transition compensation will be paid in a lump sum "less any outstanding debts Schwarzwaelder owes to Merrill Lynch." (A. 296.)

Thus, we acknowledge that there is a basis in the record to construe the parties' agreements as intending to effect a single transaction akin to a forgivable loan. But the question before us is whether Schwarzwaelder's favored construction is so overwhelming that the arbitrators' contrary reading was irrational. 9 U.S.C. § 10(a)(4); *Ario*, 618 F.3d at 295. It was not.

11

There are three significant factors that lend support to the arbitrators' decision. First, neither the promissory note nor the employment agreement describes the parties' arrangement as a form of loan forgiveness. Under the terms of the promissory note, Schwarzwaelder agreed to repay the loan "unconditionally"—*i.e.*, without regard to any offsetting payment of transition compensation. (A. 305.) Although the promissory note contemplates that repayments will be deducted from Schwarzwaelder's "transition compensation," the note provides that repayments may also be deducted from other forms of compensation. (A. 305.) Second, the employment agreement makes no mention of the promissory note and does not require that the monthly transition compensation be used for debt repayment. Finally, the release in the ERISA case explicitly enumerated a number of preserved claims for compensation without mentioning transition compensation, even though Merrill Lynch's demand for repayment of the promissory note was outstanding at the time of the ERISA settlement and the parties had agreed to stay the arbitration proceedings because the outcome of the ERISA litigation could trigger an entitlement on the part of Schwarzwaelder to transition compensation. Schwarzwaelder's defense to repayment of the promissory note is entirely dependent upon the existence of a claim to transition compensation, and she relinquished that claim in the release.

Given these factors, we find that the arbitrators' decision can be rationally derived from the parties' agreements and submissions to the panel. Even if the decision is open to criticism, "we may not overrule an arbitrator simply because [we] disagree." *Ario*, 618 F.3d at 295 (alteration in original) (internal quotation marks omitted); *see also Patten v.*

*Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) ("[A]n arbitration award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has misread the contract.").

It is hard to see why Schwarzwaelder would have given up her claim for a lump sum payment of transition compensation in the ERISA settlement, while preserving numerous other claims for arbitration. But why she would have placed such great stock in her right to "defend" Merrill Lynch's claim—rather than specifying that she could seek a lump sum payment of transition compensation—is equally a mystery. Perhaps both sides favored some ambiguity in the language of the settlement. Perhaps oversight or neglect played a role. Or perhaps a release of the claim to transition compensation was part of the bargained-for exchange to settle the ERISA case. All that must be said for the purposes of resolving this appeal is that the arbitrators' decision—in the face of the ERISA settlement, the promissory note, and the employment agreement—was not irrational.

## IV. Conclusion

We have concluded that the FINRA arbitrators did not exceed their powers within the meaning of the Federal Arbitration Act. 9 U.S.C. § 10(a)(4). Schwarzwaelder proffers no other reason on appeal to vacate, modify, or correct the arbitration award. Accordingly, the award must be confirmed. *Id.* § 9. We will remand the case to the District Court for the entry of an appropriate order.